WILLIAM WITTY and Others v. BOARD OF COUNTY COMMISSIONERS OF NICOLLET COUNTY, and Another.

May 17, 1899.

Nos. 11,625—(83).

### Drainage of Meandered Lakes by County Commissioners.

The drainage act of 1887 (Laws 1887, c. 97) does not authorize the board of county commissioners to drain public meandered lakes.

Appeal by defendants from an order of the district court for Nicollet county, Webber, J., overruling a demurrer to the complaint. Affirmed.

*A. A. Stone*, for appellants.

*G. S. Ives* and *A. R. Pfau*, for respondents.

MITCHELL, J.

In proceedings under Laws 1887, c. 97, the county commissioners made an order establishing a public ditch which involved and included the drainage of two meandered lakes. From this order certain parties appealed to the district court. The result on a trial of these appeals being adverse to the appellants, the plaintiffs, on behalf of themselves and all other parties in interest, brought this action to enjoin the county commissioners from constructing the ditch.

The lakes in question, although neither very large nor deep, are each of more than 160 acres in extent, and of sufficient size and depth to be capable of beneficial public use. The question in the case is whether a board of county commissioners has authority,

under the statute cited, to establish and construct a public ditch so as to drain such lakes. It may be conceded, for the purposes of the case, that the legislature has the power to do so where the public good requires it, and that it may delegate that power to a board or body like the board of county commissioners. But the question is whether the legislature has delegated this power by the act referred to. It is conceded that the act does not delegate any such power in express, specific terms, but the claim of the defendants is that this is necessarily or clearly implied. In determining this question, it is proper to review the policy of the legislature on the subject, as expressed in its acts.

Laws 1867, c. 40, made it a penal offense to drain any meandered lake, and created a civil liability for damages resulting therefrom. On March 1, 1883, the legislature passed chapter 108 of the general laws of that year, entitled "An act to enable the owners of lands to drain and reclaim them when same cannot be done without affecting the lands of others," etc. This was the first drainage law in the state, and, so far as it has any bearing on the question now under consideration, it is not materially different from the present drainage law. It nowhere mentions meandered lakes, or contains any express authority to the county commissioners to drain them. As showing that the legislature did not understand that it gave them any such authority, we may refer to Laws 1883, c. 139, passed at the same session, and approved the very next day, authorizing the county commissioners, on petition of all persons owning lands adjacent or contiguous, to grant permission to them to drain at their own expense any shallow and grassy meandered lake, provided "that no lake shall be so drained which is free from grass or other vegetable growths, or that contains water of a greater depth than four feet." It will be noted how carefully this act is guarded and limited. The only recognition anywhere found of the power of the county commissioners to drain lakes is the indirect and equivocal one contained in the proviso added to the acts last referred to by Laws 1885, c. 28, to-wit, that

"None of the provisions of this or the foregoing section shall apply to any case where the board of county commissioners drain any

such lake under the provisions of chapter 108 of the general laws. of 1883."

The drainage act of 1883 was superseded by that of 1887, under which the county commissioners acted in the present case. This act has substantially the same title as that of 1883. Under it the action of the county commissioners may be set in motion by the petition of a single owner of land liable to be affected by, or assessed for the expense of, the construction of the ditch. If, on the hearing of the petition, the board of county commissioners shall determine that a construction of the ditch will be of public benefit or utility, or conducive to the public health, convenience, or welfare, they shall accept the petition, and appoint three viewers. to make a survey and locate the ditch, and make a report, containing, among other things, a tabular statement of benefits and damages that will result from the construction of the ditch. On the hearing on the report of the reviewers, the commissioners, if they find it in accordance with the provisions of the act, and that the ditch will be of public utility, etc., may, in their discretion, establish the ditch as specified in the viewers' report. Then follow provisions for the payment of damages out of the county treasury, the letting of a contract for the construction of the ditch, and the assessment of benefits against the lands to be benefited by its construction. As already suggested, the act is entirely silent as to. the power of the county commissioners over public waters.

The subsequent legislative policy as to meandered lakes and streams is shown by the provisions of Laws 1897, c. 257. It will be observed that, while that act specifically provides as to the ownership of the beds of private waters and of public waters whenever "they so far recede or dry up as to reduce said lake within the classification of private waters," it contains no provisions as to ownership of the beds of public waters where they have been drained by artificial means,—an omission which is very significant, in an act which was evidently intended to cover the whole subject of the ownership of the beds of both public and private waters.

Lakes which come within the definition of "public waters" belong to the state, not in its proprietary, but in its sovereign, capacity, in trust for the public. Lamprey v. State, 52 Minn. 181, 53.

N. W. 1139. If one of these public lakes is to be drained, it will amount to the destruction of one public right for the sake of another public use. This is very different from exercising the right of eminent domain or of taxation over private property for a public purpose. It would naturally be supposed that, if the legislature intended to delegate to the county commissioners authority to determine whether the damage to result from destroying one public right would be more than counterbalanced by other public benefits to be derived therefrom, it would have expressly so declared, and not left it to inference or doubtful implication. The same is true in view of the nature and importance of the power. As this right is a prerogative of sovereignty, there must be a clear and unambiguous grant from the legislature, to authorize its exercise by others.

The powers granted by such statutes are not to be enlarged by doubtful intendment. The public rights in these lakes, with which this state abounds, are of great value and importance; and, if the legislature intended to grant the county commissioners authority to destroy them, it is to be presumed that it would have surrounded the grant with the most minute safeguards and limitations, so as to prevent the abuse of the power. On the contrary, we find this act almost destitute of any such provision, and, if defendants' contention is correct, it leaves the preservation or destruction of all the public lakes in the state to the almost unrestricted discretion of the various boards of county commissioners. The act does not even provide any rules or direction as to how the commissioners shall determine when public necessity requires the destruction of a public water. The water itself is not used for any public purpose, but merely drained off, and allowed to flow into the rivers and other streams. For these and other reasons which might be suggested, we are of opinion that the act in question does not authorize the board of county commissioners to drain public meandered lakes, and that in attempting to do so it exceeded its powers, and was subject to injunction. The court properly overruled the demurrer to the complaint.

Order affirmed.