RASMUS MADSEN and Others v. OLE LARSON and Others.[1]

May 3, 1912.

Nos. 17,602—(43).

**Meandered lakes — findings supported by evidence.**

In proceedings to drain certain meandered lakes, under section 1, c. 230, Laws 1905, it is *held* that the findings of the trial court to the effect that the lakes are not normally grassy and of a marshy character, or no longer of sufficient depth to be of any beneficial public use, are supported by the evidence.

**County ditch — appeal to district court — trial de novo.**

On an appeal from an order of the board of county commissioners order- ing the construction of a public ditch for the purpose of draining a mean- dered lake, no particular force or effect is to be given to findings of the county board as respects the character of the lake. The appeal brings the question to the district court for trial de novo, and should be there de- termined as though originally at issue in that court.

Objectors to petition for the construction of a ditch appealed to the district court for Otter Tail county from the decision of the board of county commissioners granting the petition. The appeal was tried before Taylor, J., who made findings and as a conclusion of law dis- missed the proceedings. From an order denying their motion for a new trial, petitioners appealed. Affirmed.

*John B. Thompson,* for appellants.

*Leonard Eriksson,* for respondents.

1 Reported in 135 N. W. 1003.
    117 M.—24.

BROWN, J.

Proceedings for the construction of a drain, under chapter 230, p. 303, Laws 1905, the result of which, if constructed, would drain the water from three meandered lakes. The petition was duly presented to the board of county commissioners, and, after due proceedings in accordance with the statutes, was granted. An appeal was taken to the district court on the ground that the lakes sought to be drained were not within the class of lakes which are authorized by the statute to be drained, and therefore that the order of the commissioners was without authority of law and unauthorized. After a trial in the district court without a jury, findings were made in harmony with the claim of appellants, and the order of the county board was reversed. Petitioners appealed from an order denying a new trial.

The assignments of error present the question whether the findings of the trial court are so clearly against the evidence as to justify a reversal of the order denying a new trial. A question in reference to the sufficiency of a remonstrance filed in opposition to the drain, referred to in the assignments of error, was not seriously pressed on the argument, and we dispose of it with the remark that no ground for reversal is there presented. The sole question is whether the findings are against the evidence.

Section 1 of chapter 230, p. 303, Laws 1905, provides for the drainage of wet and overflowed lands, upon conditions prescribed by the act, and among other things authorizes the widening or deepening of any stream or watercourse, and the lowering or draining of any lake, whether meandered or not, when necessary to the public welfare and the accomplishment of the purposes of the proposed drainage project, with this qualification:

"And provided, further, that no meandered lake shall be drained under the authority of this act, except in case such lake is normally shallow and grassy and of a marshy character, or except in case such meandered lake is no longer of sufficient depth and volume to be capable of any beneficial public use of a substantial character for fishing, for boating or public water supply."

While the statute confers, in general terms, the power to drain meandered lakes, the proviso above quoted in full qualifies the authority and expressly limits it to a certain class of lakes, namely, those that are grassy and marshy in character, or no longer suitable for any beneficial public use. In other words the proviso expressly prohibits the drainage of lakes, unless affirmatively shown to be of the character there stated. It would seem that, in imposing this restriction upon the conferred power, the legislature intended to follow the suggestion of the late Justice Mitchell in Witty v. Board of County Commrs. of Nicollet County, 76 Minn. 286, 79 N. W. 112, where in the course of the opinion he said: "The public rights in these lakes, with which the state abounds, are of great value and importance; and if the legislature intended to grant the county commissioners authority to destroy them, it is to be presumed that it would have surrounded the grant with the most minute safeguards and limitations, so as to prevent the abuse of the power." The suggested safeguards and limitations are contained in the proviso quoted, and must be given full force and effect.

The trial court found that the lakes in question did not come within the class of lakes authorized to be drained; in other words, that they were not normally shallow and grassy and of a marshy character, or no longer suitable for any beneficial public use. A careful consideration of the record leads to the conclusion that the findings should be sustained.

As we understand the situation, there are six different lakes which will be affected by the drain, if constructed. They constitute a chain of lakes, which in former years, and perhaps at present in times of high water, were connected by natural outlets or drains running from one to the other. The upper three lakes are sought to be entirely drained by deepening the channel between them, thus permitting the waters thereof to flow into the lakes below. It is not intended to entirely drain the three lower lakes, but petitioners do ask for the deepening of the outlets thereof to such an extent as to provide for the passage of the surplus waters from the upper lakes.

The evidence upon the question whether the upper lakes are grassy

and of a marshy character is flatly contradictory. Some of the witnesses characterized the lakes as sloughs, that they were grassy and marshy, and that the water therein was stale and stagnant, wholly unfit for use of any kind. Other witnesses gave an entirely different picture, declaring that the bodies of water were "fairly nice lakes," were not marshy or grassy, except around the shores, and that the water therein was suitable for stock and other useful purposes. But all agreed that the lakes were of a depth of from seven to ten feet, with a large open body of water. The lakes cover between eighty and one hundred acres each, with such banks as usually surround like bodies of water. In this state of the record we are unable to sustain the contention that the trial court proceeded against the evidence, or that its findings are clearly against the weight of the testimony. In fact, we are impressed that the learned trial judge could not well have found otherwise. It cannot well be said that a lake covering eighty acres of land, from seven to ten feet deep with a large, open body of water, is normally shallow and marshy. In respect to the depth and size of the lakes, there is no substantial controversy, and in other respects it is sufficient to say that the evidence is conflicting, presenting a question of fact for the trial court.

No particular effect is to be given the findings of the board of county commissioners upon this particular question. The matter came to the district court for trial de novo, and the questions presented were there to be tried and determined as though originally at issue therein.

. **Order affirmed.**