## IN RE COUNTY DITCH NO. 34.

### HERMAN ERICKSCHEN v. COUNTY OF SIBLEY.[1]

February 14, 1919.

No. 21,078.

**County ditch — drainage of meandered lake — petition sufficient.**

1. The petition provided for by G. S. 1913, § 5525, is sufficient to confer jurisdiction upon a county board to act in a drainage proceeding which will result in the drainage of a meandered lake.

**Same — description of route.**

2. Such a petition of necessity discloses that the drainage ditch to be dug passes through such lake, when the course of the ditch is described as prescribed by the statute and the lake is made a connecting link in the ditch.

**Same — new trial on appeal to district court — case followed.**

3. On appeal to the district court, under G. S. 1913, § 5589, from an order of a county board granting a drainage petition affecting a meandered lake, there is a trial de novo, the sole question being whether the lake is properly subject to drainage under chapter 300, Laws 1915. Mundwiler v. Bentson, 128 Minn. 69, followed.

**Same — findings of district court.**

4. The findings of the trial court on such appeal are entitled to the same weight as in ordinary cases tried by the court without a jury.

**Water and watercourse — preservation by state.**

5. It is the settled policy of the state to preserve its inland waters for the recreation and enjoyment of the public, if such waters are susceptible of beneficial public use for fishing, fowling, boating and are the source of a supply of ice.

[1]Reported in 170 N. W. 883.

**Same — meandered lake — right of use in public.**

    6. Meandered lakes belong to the state in its sovereign capacity in trust for the public. The right of the public to their enjoyment may not be destroyed, if they are of substantial public use under the guise of protecting the public health, promoting public welfare or reclaiming waste lands through drainage proceedings.

**Drainage of meandered lake — duty of county board and court.**

    7. The state has an interest in and as the representative of the public is affected by the drainage of a meandered lake, and it is the duty of county boards and courts to guard the interests of the state in proceedings brought to drain such a lake.

**Same — evidence.**

    8. Evidence considered and *held* not to sustain a finding that Washington lake is of no substantial public use within the meaning of chapter 300, Laws 1915.

Thomas Fitzpatrick and others petitioned the county board of Sibley county for the construction of a certain ditch. The reports of the engineer and viewers were confirmed by the board. M. S. Corrigan and others, who had filed objections, appealed from the order establishing the ditch to the district court for that county. The appeal was heard before Tifft, J., who made findings and affirmed the order of the county board so far as it related to the drainage of the so-called Washington lake. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*John J. Fahey* and *P. W. Morrison,* for appellant.
*T. Otto Streissguth* and *Young & Quandt,* for respondent.

LEES, C.

On January 26, 1916, sixteen landowners of Sibley county petitioned the county board to establish and construct a drainage ditch. The petition states that wet lands along the route of the ditch require drainage to make them valuable for agricultural purposes, and that on such lands there are stagnant waters which give off offensive odors and breed disease.

The route of the ditch and its point of beginning and termination are set forth as coinciding with "old County Ditch No. 1 of said county,

which has now become nearly extinct." Appellant and six other land-owners filed written objections to the granting of the petition, on the ground that it was proposed thereby to drain Washington lake, a meandered body of water which might not be drained under the statutes of the state. The county board, on November 28, 1916, made an order granting the prayer of the petition. Under the provisions of G. S. 1913, § 5589, an appeal from the order was taken and the proceedings carried to the district court where a trial was had in August, 1917, before the court without a jury. Findings were made to the effect that the proposed ditch runs through and crosses Washington lake, which is a government meandered lake; that it will drain it in part, and that, prior to the filing of the petition and at the time of the trial, it was normally shallow and marshy and lacking in sufficient depth or volume to be of any substantial public use for fishing, boating or water supply. The order was that the action of the county board "insofar as it enables partial drainage of the lake" should be affirmed.

Appellant moved for a new trial, specifying as one of the grounds therefor that the court's decision was not warranted by the evidence and was contrary to law. His motion was denied and he appealed. It is the view of the court that but two questions need be considered in disposing of this appeal.

The first is whether appellant is entitled to a reversal because of alleged jurisdictional defects and omissions in the petition, and, if that is ruled against him, the second is whether affirmance of the order of the county board was justified by the evidence and the law applicable thereto.

1. Counsel for appellant insist that the petition is fatally defective in that it does not set forth that drainage of a meandered lake is proposed. We do not find any statutory provision requiring this to be done. Section 5525, G. S. 1913, appears to be the only statute on the subject, and the petition conforms to its requirements. We are of the opinion that it was sufficient to invest the county board with jurisdiction over the proceeding. State v. Watts, 116 Minn. 326, 133 N. W. 971; Sorknes v. Board of Co. Commrs. of Lac qui Parle County, 131 Minn. 79, 154 N. W. 669; Asquith v. Engstrom, 133 Minn. 113, 157 N. W. 1004.

It is probably true that when one of the purposes of a drainage proceeding, in the picturesque language of counsel for appellant, is to "as-

sault a lake," notice of the designs of the petitioners might well be required to be set forth in the petition. But we are dealing with a statute which has no such requirement and cannot read into it something its plain language does not import. Furthermore a petition setting forth the beginning, route and terminus of a drainage ditch, as required by the statute, must inevitably disclose the fact that a lake will be affected if the course of the ditch as described extends through it as was the case here, and appellant's objections filed with the county board indicate that the scope and purpose of the proceedings were known to him and the others who signed them.

2. The second question is the vital one in this case. The appeal to the district court presented but one issue triable by that court. It had jurisdiction only to determine whether Washington lake was such a lake as could be drained, as it would be drained, if the petition was granted. Mundwiler v. Bentson, 128 Minn. 69, 150 N. W. 209.

On appeals to the district court from administrative boards vested with jurisdiction to act in matters involving the exercise of legislative judgment and discretion, the court is limited to the inquiry of, whether or not the action of the board was arbitrary, oppressive, without evidence to sustain it, or contrary to law. Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077; Hunstiger v. Kilian, 130 Minn. 474, 153 N. W. 869, 1095.

In passing upon the petition in the case at bar, the county board was not merely required to decide whether the public would be benefited by granting the petition and draining the lands mentioned therein. There was presented for its decision the additional question of whether Washington lake was in fact a lake of a character answering the description of meandered lakes which may be drained under chapter 300, p. 425, Laws 1915.

The latter question was judicial and not legislative in character, and on appeal from the county board to the district court that question was triable de novo, and the findings are to be given the same weight as findings of fact in cases originating in that court. Madsen v. Larson, 117 Minn. 369, 135 N. W. 1003; State v. Nelson, 136 Minn. 272, 159 N. W. 758, 161 N. W. 576.

We have considered the evidence in the light reflected by the legisla-

tion of the past 50 years upon the policy of the state as to the preservation of its inland waters. By chapter 40, p. 70, Laws 1867 (now section 8949, G. S. 1913) it was made a criminal offense to drain a meandered lake. By chapter 139, p. 196, Laws 1883, the county commissioners were authorized to permit adjacent landowners to drain shallow, grassy lakes not over four feet deep. By chapter 257, p. 478, Laws 1897, all meandered lakes having an area of over 160 acres and deep enough for beneficial use for fishing, fowling, boating or furnishing water for domestic, municipal or agricultural purposes, were declared to be public waters. Chapter 230, p. 303, Laws 1905, as amended by chapter 300, p. 425, Laws 1915, provides that a meandered lake might be drained in part or in whole, if it has become normally shallow and of a marshy character, or is no longer of sufficient depth or volume to be of any substantial public use for fishing, boating or water supply. If only part of it is to be drained, the county board had power to cause dikes or dams to be constructed to hold the water at ordinary high water mark in that part of the lake not drained. This is the controlling statute in the case before us.

This legislation points to a settled policy designed to preserve inland waters which afford recreation to the public as well as waters susceptible of use for commercial purposes. With this policy this court has been in full accord. Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L.R.A. 670, 38 Am. St. 541; Witty v. Board of Co. Commrs. of Nicollet County, 76 Minn. 286, 79 N. W. 112; Madsen v. Larson, 117 Minn. 369, 135 N. W. 1003; State v. Korrer, 127 Minn. 60, 148 N. W. 617, 1095, L.R.A. 1916C, 139. Drainage laws are sustained on the theory that the state is exercising its police power, the right of eminent domain, or its taxing power, either to protect public health, promote the public welfare, or to reclaim waste lands and make them suitable for agricultural uses. Lien v. Board of Co. Commrs. of Norman County, 80 Minn. 58, 82 N. W. 1094. Meandered lakes belong to the state in its sovereign capacity in trust for the public, and if such a lake is drained it amounts to the destruction of one public right for the sake of another public use. Witty v. Board of Co. Commrs. of Nicollet County, supra.

As a rule, drainage proceedings are begun for the sole purpose of reclaiming wet lands, primarily for the direct benefit of the owners thereof,

and incidentally for the promotion of the public welfare by increasing the productiveness and taxable value of lands having little or no value unless drained. Doubtless there is an advantage to the public in reclaiming waste lands, but there must be set against it the loss which follows upon the destruction of public waters, where that result is brought about in the process of draining such lands. We have observed that in contested drainage proceedings the petitioners are chiefly interested in adding to their holdings of arable land, while their opponents are concerned over possible damage to their lands as a result of the drainage of those of their neighbors. In the clash of conflicting private interests, those of the public are apt to drop out of sight. Yet the state, though not a party to nor represented in the proceedings, has real and substantial rights to protect. The title it holds in its sovereign capacity in trust for the public is directly affected whenever a meandered lake is drained. It should be the concern of the county board and of the courts to guard the rights of the public, and to preserve for the enjoyment of this and future generations all bodies of water which have present or potential public value.

With these considerations in mind, we have attentively read the voluminous record in this case to ascertain whether the ultimate conclusion of the learned trial court can be sustained. It appears beyond dispute that Washington lake is bounded by meander lines, has an area of about 600 acres, with well defined shores, having a height of several feet above the water in many places and receding substantially to the water level in other places; that it has a soft muddy bottom; that the depth of its waters fluctuates to such an extent that there have been two or three occasions in the past 50 years when it has been dry, while at other seasons it has had a depth of 6 to 10 feet. At the time of the trial in August, 1917, its depth varied from 2.7 feet a few rods out from its shores to 3.5 feet near its center, which was its maximum depth at that time. In 1907 its maximum depth was 5.5 feet. These depths were testified to by witnesses who had made and recorded actual measurements. The testimony fairly shows that the water is lower in midsummer than in spring and fall, and that the water was at its normal stage in 1917. At least one-third of the surface of the lake was then overgrown with vegetation. The remainder appeared to be clear water with occasional clumps of

reeds growing above the surface. Under the clear water area there was everywhere present a plant described by the witnesses as a moss or vine which came within six to twelve inches of the surface. The presence of this growth made rowing difficult and bathing out of the question, after the vegetation came to maturity in midsummer. Fish are taken from the lake only by spearing. They are principally carp, suckers and other coarse fish. During the winters fish are speared through the ice. At all seasons they are taken chiefly at the outlet to the lake. The lake is frequented by wild ducks in the fall of the year. It appears to furnish them with a feeding ground. Hunters come from the farms and villages in the vicinity and from distant cities during the shooting season. Numerous boats are on the lake then. A few are kept there constantly by farmers who live nearby. Ice is cut from the lake each winter chiefly to supply a creamery not far from it.

Years ago a ditch was dug leading from the country southwest of the lake, which appears to have been designed to carry water from low lands in the vicinity of Mud lake to that lake, and thence into Washington lake. The proposed drainage ditch was to follow the course of this inlet to the lake and to extend into it 150 feet. From this point to the outlet of the lake at its northeasterly end the distance is about one and a half miles. There was to be nothing done between the inlet and outlet. It was proposed to deepen the outlet two feet at the point where it leaves the lake, and to carry the water something over two miles in the ditch already there, deepening it for that distance. This outlet appears to have been originally a natural stream known as Bevans creek. From time to time farmers, whose land was traversed by it, had deepened and widened the creek bed, and it became part of the old drainage system referred to in the petition as Ditch No. 1. At the time of the trial this outlet was about 12 feet wide and 2 feet deep. If the proposed ditch were dug it would lower the water in the lake 2 feet or more, but would not wholly drain it. The conditions would be the same as before so far as decaying vegetation and stagnant water are alleged to exist, and manifestly the public health and comfort would not be promoted.

To sum up, the situation disclosed by the evidence would be substantially this if the project is executed: The area and depth of the lake will be reduced; such fishing and hunting as it affords, destroyed; ice

can no longer be obtained from it; and the alleged obnoxious conditions caused by decayed vegetation along its margin will be aggravated. We fail to see wherein the public health or welfare will be benefited by the proposed partial drainage of this lake. On the contrary, it seems clear that the substantial public uses which have been made of the lake and which it is capable of affording in its present condition will be lost, with no public benefits gained to offset their loss. As was remarked in Priewe v. Wisconsin, 93 Wis. 534, 67 N. W. 918, 33 L.R.A. 645, the lake will be destroyed and a nuisance created to the apparent injury of the riparian owners, and this the state has no power to do under the guise of promoting the public health.

It is our opinion that the conclusion reached by the trial court cannot be sustained, for the reason that Washington lake is not such a body of water as is subject to drainage within the meaning of chapter 300, p. 425, Laws 1915. The statute cited appears to contemplate the maintenance of the normal water level in that part of a lake which is not drained where partial drainage is effected. If such is the meaning of the statute, in no event could this lake be partially drained in the manner proposed, but it is unnecessary to decide the question suggested in disposing of this case and it is left open for future consideration.

Order reversed.