STATE EX REL. OLE GREIBROCK v. ANDREW GRINDELAND, JUDGE OF DISTRICT COURT, FOURTEENTH JUDICIAL DISTRICT.[1]

October 10, 1919.

No. 21,486.

**Judicial ditch — what landowners may sign petition for ditch.**
  1. Under section 5525, G. S. 1913, as amended by chapter 441, Laws 1917,

[1]Reported in 174 N. W. 312.

persons whose lands are described in the petition as affected or benefited by the proposed ditch though not traversed by it, are qualified to sign as petitioners.

**Same — jurisdiction of court to establish ditch.**

2. The record does not show that relator did not have notice of the preliminary hearing. And, even if he did not, the court had jurisdiction to establish the ditch since no part thereof passes over relator's land.

Upon the relation of Ole Greibrock the supreme court granted its writ of certiorari directed to the district court for Marshall county, Honorable Andrew Grindeland, Judge, to review the action of that court in establishing Judicial Ditch No. 30, Marshall and Pennington counties. Affirmed.

*James Manahan, Thomas V. Sullivan* and *J. D. Hoogesteger,* for relator.

*Julius J. Olson, Rasmus Hage, Charles Loring* and *G. A. Young-quist,* for respondent.

HOLT, J.

Certiorari to test the validity of an order establishing a judicial ditch.

Prior to the filing of the petition, County Ditch No. 20 had been constructed in Marshall county. Its course was from east to west, emptying into Thief river. This ditch also received the waters from Judicial Ditches Nos. 12, 13 and 18, which drained portions of westerly parts of Beltrami county and the northerly portion of Pennington lying easterly of the river. The territory mentioned is very flat, sloping slightly to the northwest, the drainage being into Thief river, which here flows in a southwesterly direction. Judicial Ditch No. 18, into which empty also the waters of No. 13, runs for about 11 miles parallel with County Ditch No. 20 of Marshall county, but four miles south thereof, then turns due north into Ditch No. 20. It was found that No. 20 received more waters than it could efficiently discharge, and flooding resulted. To relieve the situation a petition for Judicial Ditch No. 30 was signed, presented to, and granted by the court upon a hearing had on the engineer's preliminary report. The actual ditch, as approved by the court, is an extension due west to Thief river of Judicial Ditch No. 18 from

the point where it turns north as above noted. This extension is about nine miles long. The court found that the entire territory drained by the above named ditches and the one proposed constitutes one drainage basin, and that all lands therein may be affected by the project. There can be no doubt that the record justifies the public need of the ditch petitioned for. Relief must be had from the waters now collected by the existing ditches mentioned, and the evidence justifies the conclusion that the method proposed is the most feasible.

The only question presented by the appeal is whether the petition for the ditch proposed is signed by the proper landowners so as to confer jurisdiction. The petition is signed by 40 persons owning land affected by the flooding in the drainage basin, but only one owns land over which the proposed ditch passes. Prior to the amendment of section 5525, G. S. 1913, by chapter 411, p. 694, Laws 1917, there could be no question but that the petition was signed so as to give jurisdiction, for the signature of but one person whose lands were liable to be affected or assessed for the construction of the ditch sufficed. But, by the amendment referred to, it now requires the petition to be signed "by not less than 25 per cent of the owners of the land described in such petition, but in no event shall more than eight signers be required." Further on in the section it specifies what the petition shall set forth concerning the ditch, among other matters, "a description of the starting point, the general course and the terminus of same, together with a description of the lands over which the proposed ditch or improvement passes."

It is the contention of counsel for relator that no petitioner is legally qualified to sign, unless he be the owner of land through which the proposed ditch is to be constructed, for it is argued that the word "owners" in the first quoted clause is limited by the subsequent one to owners of lands over which the ditch is to pass. We do not think there was any intention by the amendment to change the qualification of the signers of the petition, but merely the number. As introduced and as passed by the House the proposed amendment of the section provided for signature "by not less than 25 per cent of the owners of the land shown by the petition to be affected by the improvement." This was changed

as it passed the Senate to "signed by not less than twenty-five per cent of the owners of the lands described in such petition, as the same appears in the tax duplicates in the office of the county treasurer of the county or counties affected, but in no event to exceed six in number," etc. There were also added further requirements as to what the petition should contain, among others "a description of such lands with the names of the owners." Afterwards the bill went to conference and was amended and passed, so far as this section is concerned, in its present form.

It is to be noted also that the original section 5525, and as left by the amendment of chapter 441, p. 694, Laws 1917, provides that a ditch proceeding may be entertained upon the petition by a township, village or city liable to be affected or assessed for the expense of the construction thereof, or by the duly authorized agent of any public institution, corporation or railroad whose lands are liable to be affected or assessed, or by the state board of control or its duly authorized agent. In none of the three alternatives referred to was there any change from the only condition imposed upon the right of the petitioners to sign, viz., ownership in lands affected by or assessed for the construction of the ditch. It is therefore considered that the phrase "owners of the land described in such petition" means lands so designated therein that it is apparent that the construction of the proposed ditch will affect them or subject them to the expense thereof. Any other interpretation might lead to absurd results. An extensive tract may need drainage badly. There are many owners interested, but the only feasible route for a ditch may be over the lands of a few who oppose drainage. Can it be said this amendment was intended to deprive the many of the opportunity to have the court pass upon the advisability of drainage for the tract? We think not. Other situations readily suggest themselves under which it would be impossible to obtain the advantages the drainage law was intended to confer, if none but the owners of the land through which the drain or ditch is to pass are qualified petitioners.

Another consideration confirms the view that there was no intention to change the status of the signers of a drainage petition. Chapter 441, p. 720, Laws 1917, amended several sections of the drainage law, among them section 5672, relating to the extension of outlets found ineffectual

in drainage projects that have been completed. Such extensions may be secured upon petition of those whose lands were affected by the orig· inal proceeding or whose lands are liable to be affected by or assessed for the extension.

Moreover, it is not apparent why, under the petition here attacked, jurisdiction to construct the proposed ditch is not acquired under said section 5672, which confers wide powers upon the court to make equitable assessments upon lands affected for the purpose of constructing a needful outlet for established drainage districts that are subject to flooding. Although the four ditches involved here have been established and constructed in separate proceedings, they are all within one drainage basin and their waters join and are set back by a common ineffectual outlet. A new outlet will benefit the lands in the whole drainage basin. And there is nothing so far taken to deprive the court of power to proceed under said section 5672.

The other objections urged by relator in his brief do not require extended discussion. · Assuming that relator owns the land he designates as his in the petition for the writ of certiorari, the record does not show lack of notice of the preliminary hearing as to him so as to deprive the court of jurisdiction to proceed. It is true that we do not discover relator's name among the list attached to the affidavit of the clerk as to mailing the notice. But relator gave no testimony that he had had no notice, or that his address was known to the clerk or could have been ascertained by inquiry at the county treasurer's office. Since the amendment of 1917 eliminated the provisions for notice from section 5525 and inserted one reading differently in section 5526, which says nothing as to the course to pursue if the owner's name or address is unknown to the clerk, we have only the direction contained in section 5557, wherein it is specified that the same notice of the preliminary hearing in a judicial ditch proceeding shall be given as is provided in section 5531, wherein it is provided that the clerk shall mail a printed copy of the notice to all persons whose lands are affected and whose address is known to the clerk or can be ascertained by such clerk by inquiry at the county treasurer's office of the county wherein such land is situated. However that may be, the failure, if such there were, to mail the notice to an individual among

the more than 1,000 interested owners, cannot jeopardize the whole project, or deprive the court of jurisdiction, especially since it does appear that the ditch as now fixed by the court does not touch any land owned by relator. We are not now concerned with the possible damages or benefits to his land. That question has not been reached. If the viewers or the jury determine that his land is not benefited, manifestly no assessment can be levied thereon, and if it be found that only injury results compensation must of course follow.

The petition is signed by qualified parties. It sets forth legal grounds for the proposed project which the evidence amply established. It is not necessary to prove that every tract of land traversed by the ditch will be benefited, or is in need of drainage.

It is to be noted that the order sought to be reversed is a preliminary order and is not the final order establishing the drainage project. The court deemed he had acquired jurisdiction to direct the engineer to make a detailed survey of the whole project as outlined by the petition and the engineer's preliminary report as modified by the court. In this conclusion there was no error.

Order affirmed.