## STATE EX REL. P. C. WESTERGAARD v. DISTRICT COURT OF STEARNS COUNTY.[1]

October 31, 1919.

No. 21,160.

**Drainage of meandered lake.**

1. The drainage of a meandered lake is forbidden, unless it be of the class authorized to be drained by section 5523, G. S. 1913, as amended.

**Same — not authorized by statute.**

2. Evidence considered and *held* to establish that Crow lake in Stearns county is not within the class of lakes authorized to be drained by that statute. The case of In re County Ditch No. 34 in Sibley County, 142 Minn. 37, 170 N. W. 883, followed and applied.

Upon the relation of P. C. Westergaard the supreme court granted its writ of certiorari directed to the district court for Stearns county, to review an order of that court, Roeser, J., establishing Judicial Ditch No. 3 in Stearns and Kandiyohi counties, insofar as the same affects the drainage of Crow lake. Reversed.

*Sam G. Anderson,* for relator.

*Frank Tolman* and *J. D. Sullivan,* for respondent.

TAYLOR, C.

Certiorari to review an order establishing a judicial ditch in Stearns and Kandiyohi counties. The proposed ditch begins in Crow lake in the town of Crow Lake in Stearns county and extends into Kandiyohi county for several miles and has several branches. If constructed as proposed it will drain Crow lake entirely, and the sole question presented is whether this lake is of such a character as to bring it within the class of lakes which are permitted to be drained by section 5523, G. S. 1913, as amended.

[1]Reported in 174 N. W. 522.

Section 8949, G. S. 1913, makes it a criminal offense to drain a meandered lake unless such drainage is authorized by law. Section 5523, G. S. 1913, as amended, gives authority "to drain in whole or in part, meandered lakes which have become normally shallow and of a marshy character, or which are no longer of sufficient depth or volume to be of any substantial public use for fishing, boating or water supply."

Crow lake is a meandered lake having an area of something over 500 acres and a shore line of something over five miles. Portions of the shore line are well defined with high wooded banks; other portions are low, marshy and ill-defined. The depth of the water is less than four feet on the average, but is six or seven feet in places. The lake has no inlet, but is fed in part by springs along the northwesterly shore. The outlet has become obstructed, and water flows out only at times of high water. The bottom of the lake is "muck" and is entirely covered by water plants which grow below the surface of the water. Rushes and other water plants grow above the surface in portions of the lake, but more than half of its area is clear, open water. Boats have been kept and used on the lake for many years. Wild ducks frequent the lake in the fall, and are hunted upon it in the shooting season. Coarse fish are taken from it by spearing through the ice in the winter. It supplies most of the ice used in the village of Belgrade. It furnishes the water supply for the stock on several farms adjoining it. One farmer has installed a pumping plant, by which he pumps the water and "muck" from the bottom of the lake onto his land, which both irrigates and fertilizes it and thereby increases its productiveness.

Those who favor draining the lake insist that the depth and volume of the water is gradually lessening, and that the water has become stagnant, malodorous and unfit for use for any purpose. This is denied by those who oppose draining it. A majority of the residents around the lake oppose draining it. Those who oppose draining it own nearly two-thirds of the shore line and would obtain more than half the land which would be reclaimed by such drainage.

The laws applicable to such lakes received careful and extended consideration in the case of In re County Ditch No. 34, 142 Minn. 37, 170 N. W. 883, decided since the trial of the instant case. The lake involved in that case was quite similar, in essential respects, to the lake involved in

this case, and we find no substantial ground for making a distinction between them. The reasons for reaching the conclusion that such lakes are not within the class of lakes which the statute permits to be drained, are stated so fully in that case that it is unnecessary to repeat them here.

The respondents argue that the decision in the Sibley county case was based on the ground that the Sibley county ditch would only partially drain the lake there involved, and that such partial drainage would destroy the usefulness of the lake and aggravate the objectionable conditions without benefiting the public, and is not controlling in this case for that reason. The opinion discusses these matters, among others, but the decision was placed on the ground that the lake "is not such a body of water as is subject to drainage within the meaning" of the statute.

The relator, through his attorney, filed a brief, setting forth his contention in proper and appropriate language. Another landowner, who opposes the draining of the lake, has filed a so-called brief prepared by himself, which the respondents move to strike from the files as scurrilous and abusive. An examination of this brief shows that, while it contains practically nothing that can be of assistance in the solution of the questions presented, it contains numerous unseemly and unjustifiable aspersions, for which there is not the slightest foundation in the record, upon nearly all those who had duties to perform in the drainage proceedings including the trial court, and for this reason it is stricken from the files.

For the reason that we are of opinion that Crow lake is not within the class of lakes which the statute permits to be drained, the order establishing the ditch is reversed, but this reversal does not bar any proper proceedings for carrying out the remainder of the drainage project. Mundwiler v. Bentson, 128 Minn. 69, 150 N. W. 209.