# IN RE ESTABLISHMENT OF JUDICIAL DITCH NO. 75 IN POLK COUNTY.[1]

July 22, 1927.

No. 26,238.

**Ditch petition contained sufficient signatures.**

1. The petition for the ditch is signed by the requisite number of qualified petitioners.

**Withdrawal of petitioners from support of project.**

2. Petitioners cannot withdraw their names from the petition after the court has acted upon it by ordering a preliminary survey, but may dismiss the proceeding in the manner provided in the statute.

**What land to be described in petition.**

3. Only the land over which the ditch passes is required to be described in the petition.

**Presumption that confirmed assessment is correct.**

4. The assessment as confirmed by the court is presumed to be correct. Omission of benefited lands, if any, does not render it invalid.

Drains, 19 C. J. p. 641 n. 75; p. 642 n. 78; p. 644 n. 99; p. 645 n. 13; p. 733 n. 79 New; p. 739 n. 54.

---

See note in 11 L.R.A.(N.S.) 372; 35 L.R.A.(N.S.) 1115; 9 R. C. L. 636.

Certiorari to review proceedings of the district court for Polk county, Watts, J., for the establishment and construction of judicial ditch No. 75. Affirmed.

F. A. Grady, Julius J. Olson, and O'Brien & Sylvestre, for relator. James E. Montague and W. E. Rowe, for respondents.

[1]Reported in 215 N. W. 204, 216 N. W. 229.

PER CURIAM.

Certiorari to review proceedings for the establishment and construction of judicial ditch No. 75 of Polk county under the provisions of L. 1925, p. 585, c. 415. The petition for such proposed drainage system was signed by 46 qualified petitioners and filed May 11, 1926. A preliminary hearing upon the petition was had on July 16, at which time testimony was taken and the petition was considered and held sufficient to authorize the court to proceed with the improvement. Accordingly an engineer was appointed to make a survey of the proposed system and report his doings as provided by law, and the hearing was adjourned to August 6, 1926, at which time certain of the petitioners asked leave to withdraw their names from the petition, which was denied. Viewers were appointed and a final hearing was had before the court on January 24, 1927, when all parties were given opportunity to be heard for or against the establishment and construction of the proposed system. Thereafter the court made and filed its order establishing such drainage system in accordance with the report of the engineer and assessing benefits and awarding damages as provided in the viewers' report.

[1] The contention of the relator is that the trial court was without jurisdiction to act in the premises for the reason that the petition was not signed by a majority of the resident owners of the lands described therein nor by the owners of at least 51 per cent of the area of land described in the petition; that the lands likely to be affected by or assessed for the improvement were not described in the petition; and that benefited lands were omitted from the assessment.

The source of the proposed ditch is on the east line of section 1 in the township of Tabor and extends west on the town line between the townships of Tabor, Northland and Esther on the south, and Farley, Sandsville and Higdem on the north, outletting into the Red River of the North on section 5 in the township of Esther. Branch No. 1 of the proposed system extends from a point on the north

line of section 4 in the township of Tabor southeasterly to and across section 24 in that township.

Thirty-five of the petitioners are residents of the townships of Tabor and Farley and own land adjacent to the line of the proposed ditch. Eleven of the petitioners own land adjacent to the ditch, west of the two townships last named.

County ditch No. 42 has its source in the northeast corner of section 24 in the township of Sandsville and extends west on the section line, connecting with judicial ditch No. 1, which extends west on the section line through the township of Higdem and has its outlet in the river. To the south of the proposed ditch is county ditch No. 2, which has its source on the section line between sections 23 and 26 in the township of Tabor and extends due west on the section line to the river. It will be observed that ditch No. 42 and ditch No. 1 are three miles to the north and parallel with the line of the proposed ditch, and county ditch No. 2 is four miles to the south and parallel with the line of the proposed ditch. These ditches are not of sufficient capacity to carry off the water discharged into them from the east, and a large area is overflowed annually. The purpose of constructing ditch No. 75 is to supplement these two existing ditches, in the belief that the three will have sufficient capacity to carry off the water brought from the east by other ditches and will afford proper drainage to the flooded area.

The petition is sufficient in form and substance to give the court jurisdiction and to authorize the establishment of the proposed system as asked for therein. The engineer's report recommends and the final order of the court establishes the proposed system as asked for in the petition. No branches are added nor extensions provided for. The source, general course and outlet are as asked for in the petition which was signed by the owners of not less than 51 per cent of the land described therein.

[2] On August 6, 1926, and thereafter, a number of signers asked leave to withdraw their names from the petition, prior to which time the court had received and acted upon the petition by appointing an engineer and directing him to make the preliminary

survey required by the statute. The request came too late. Petitioners cannot withdraw their names after the petition has been presented to the court and the court has taken jurisdiction of the matter and acted thereon. Seibert v. Lovell, 92 Iowa, 507, 61 N. W. 197; Sim v. Rosholt, 16 N. D. 77, 112 N. W. 50, 11 L.R.A.(N.S.) 372. But they may dismiss the proceeding in the manner provided in § 112 of the act. No attempt was made to dismiss under this section.

[3] The claim of the relator that the petition is required to describe the area likely to be affected by the construction or assessed for the cost of the improvement cannot be sustained. Section 3 of the act prescribes what the petition shall contain. It requires the petition to describe "the lands over which the proposed ditch or improvement passes." It does not require the petition to describe any other lands. The petition in question describes the lands over which the proposed ditch passes, and does not purport to describe any other lands. As it complies with the statutory requirement in this respect, it is sufficient. In re County Ditch No. 34, 142 Minn. 37, 170 N. W. 883; Sellen v. County of McLeod, 165 Minn. 74, 205 N. W. 625.

As it is not claimed that the proceeding is brought under § 90 of the act, providing for consolidation of drainage systems, we have no need to consider the provisions relating to such consolidation.

[4] The relator urges that a large area benefited by the proposed ditch is omitted from the assessment. The benefited lands are to be ascertained and determined by the viewers (§ 17), who are required to assess all benefited lands (§ 24). The viewers made and reported their assessment, and after a full hearing it was approved and adopted by the court. As so approved, it is presumed to be correct until the contrary is shown. The question of what lands are benefited is a question of fact to be determined by the viewers, and upon this incomplete record we cannot say that they adopted a wrong principle or reached a wrong conclusion. Even if lands that ought to have been assessed were omitted, it does not go to the validity of the order establishing the ditch or making the assess-

ment. Section 32 of the act gives any person aggrieved the right to appeal and have his benefits and damages determined by a jury, and also gives him the right to have the benefits and damages to lands other than his own determined on such appeal. The action, if any, taken under this provision is not before us.

Furthermore, the lands claimed to have been omitted are not described, and the owners thereof are not named, and such owners are not parties to this certiorari proceeding.

The court had jurisdiction to establish the proposed ditch and cause it to be constructed, and the order appealed from is affirmed.

## ON APPLICATION FOR REARGUMENT.

On October 28, 1927, the following opinion was filed:

PER CURIAM.

In an application for a reargument, the relator urges: First, that the number of petitioners required should be determined by taking into account all lands affected by or assessed for the construction of the ditch, and not merely the lands through which the ditch passes; and second, that it conclusively appears that large areas of benefited land are omitted from the assessment. He cites State ex rel. Greibrock v. Grindeland, 143 Minn. 435, 174 N. W. 312, in support of his first claim.

[1] Under the early drainage laws any person whose land was "liable to be affected by or assessed for" the construction of a proposed ditch could petition to have it constructed. The law remained in this form until amended by L. 1917, p. 692, c. 441. The law as then amended required a petition signed by 25 per cent of the owners of the lands described therein, but provided that no more than eight signers should be required in any event. It also required the petition to describe the lands over which the ditch would pass. The case cited arose under that act. The petition was signed by more than eight landowners whose lands would be affected by the ditch, but only one of them owned land over which the ditch passed. The court held the petition sufficient, and placed its de-

cision on the ground that there was no intention to change the qualifications of petitioners, but only the number; and on the further ground that the improvement contemplated was authorized by the section of the statute which provided for extending and enlarging insufficient outlets and which section as amended provided that such proceedings might be initiated by a petition signed by one or more landowners whose lands were affected by the original ditch or were liable to be affected by or assessed for the extension. (See G. S. 1913, § 5672, as amended by L. 1917, p. 692, c. 441, § 18.)

The present proceeding is under L. 1925, p. 585, c. 415, which expressly repealed the prior statute relating to county and judicial ditches, including L. 1917, p. 692, c. 441, and enacted a complete drainage code. Although it contains many provisions found in the repealed statutes, it also differs from them in numerous substantial respects. It requires a petition signed by "not less than a majority of the *resident* owners of the land described in the petition or by the owners of not less than 51 per cent of the area of such land." Later in the same section it requires the petition to describe the lands through which the ditch passes, but nowhere requires it to describe any other lands. Under the prior law nonresident as well as resident landowners were qualified petitioners. Under the first part of the above provision only *resident* landowners are qualified petitioners. Under the second part of the above provision, the petitioners are not limited to resident landowners, but they must own at least 51 per cent of the area of the land described in the petition. No similar provision is found in the prior law. The prior law authorized the construction of a ditch on a petition signed only by the representatives of any one of the boards or institutions or municipalities or corporations named therein. The present law authorizes such representatives to sign the petition, but provides that the signature of the representatives of any such body shall count only as one signature to the petition. Under the prior law any landowner whose land was liable to be assessed therefor could

petition to have an insufficient outlet extended or enlarged. Under the present law such a petition must be signed by "not less than twenty-five per cent of the freeholders whose property is affected by such overflow."

The statute provides that on the filing of a petition with a bond to cover expenses an engineer shall be appointed to make a preliminary examination and survey, and to report as to the practicability, necessity and advisability of constructing the ditch as outlined in the petition or with such changes and additions as he shall recommend; that a hearing shall be had upon this report and, if it be found that the construction of the ditch is necessary and feasible, the engineer shall be directed to make a detailed survey and furnish full and complete plans and specifications for the improvement together with a map of the drainage system showing the section, township and range in which the lands affected are situated; that upon the approval of the engineer's final report by the commissioner of drainage the viewers shall proceed to determine the lands which will be benefited or damaged by the construction of the ditch and the amount of such benefit or damage to each tract; that upon the filing of their report a hearing shall be had and notice thereof given, which notice shall designate the governmental sections of land over which the ditch is surveyed and the names of the owners of lands affected by the ditch as shown by the reports of the engineer and viewers; that the service of such notice in the manner prescribed shall give jurisdiction of the lands described in such reports and of the lands of any owner whose name is given in such notice; that if it be found at such hearing that lands not included in the notice should have been included and assessed, the hearing may be adjourned and the viewers directed to re-examine the lands affected and file an amended report; and that upon the filing of the amended report a new notice shall be given if other lands or other landowners are to be brought in.

The legislature knew that the lands which would be benefited by the ditch could not be determined with any degree of accuracy until a survey was made, and did not require the petitioners to describe

the benefited lands in the petition, but only the lands over which the ditch would pass. The statute contemplates that the engineer shall make his final report setting forth the nature and extent of the proposed improvement and all the details thereof as the basis for all future proceedings; and that thereafter the viewers, with this report as a basis, shall determine what lands will be affected or benefited by the construction of the improvement. If the claim of the relator were true, that all lands benefited are to be taken into account in determining the number of signers required upon the petition, it would make the validity of the petition depend upon matters which the petitioners could not be expected to know and which are not only to be ascertained and determined by others but are not to be so determined until after the petition has been presented and acted upon and large expenses have been incurred thereunder. We find nothing in the statute indicating any intention to create such a situation; and notwithstanding what may have been said in the case cited in considering the facts then before the court, we adhere to the construction placed upon the present statute in the original opinion.

. [4] The second point urged does not go to the jurisdiction and requires only brief consideration. The statute provides that if it appears at the hearing that benefited lands which should have been assessed have been omitted the matter is to be resubmitted to the viewers for a further report. The order shows that the viewers' report was referred back to them for further consideration and that they made an amended report, but evidently no additional lands were reported as benefited. The court approved and adopted this report. The ditch extends east and west and is about 17 miles long. The land along the west six or seven miles of the ditch next the outlet is nearly level. Along the remainder of the ditch the land rises toward the east giving a fall of two and one-half feet or more to the mile. The large area of land claimed to have been improperly omitted from the assessment lies to the east of the east end of the ditch and lies still higher. We find no evidence in the record which

will justify us in disturbing the conclusion of the viewers and of the trial court as to what lands will be benefited.

With this further explanation of the reasons for the decision the application for a reargument is denied.