IN RE APPLICATION OF EDWARD H. AND HAZEL BALDWIN TO VACATE LAKE STREET, ETC. ARNE BERGREN AND ANOTHER, APPELLANTS.[1]

June 23, 1944.

No. 33,721.

[1]Reported in 15 N. W. (2d) 184.

12

*Thomas Tallakson,* for appellants.

*O. J. Grathwol* and *Johnson, Sands & Brumfield,* for respondents.

STREISSGUTH, JUSTICE.

This is a proceeding under Minn. St. 1941, § 505.14 (Mason St. 1927, § 8244), for the vacation of a short stretch of Lake Street (about 150 feet) located on the north shore of St. Albans Bay of Lake Minnetonka in Excelsior township, Hennepin county, described as "All that part of Lake Street lying between the southeasterly line of County Road No. 82 and the southwesterly line of West Street extended to the shore of Lake Minnetonka, Bennett's Addition to Covington." The petitioners, Edward H. Baldwin and Hazel Baldwin, who are respondents here, own two lots, with a frontage of 50 and 51 feet respectively, abutting on Lake Street, while a third abutting lot is owned by Albert Jacoby, who consented in writing to the partial vacation of the street.

Appellants are the owners of a lake-shore lot abutting on the same street and lying immediately east of the portion sought to be vacated. They occupy their property only during the summer months of each year but, during such period, have occasion to use the portion of Lake Street sought to be vacated as their most direct connection with county road No. 82, leading to Minneapolis and Excelsior. They can, however, by a more circuitous route, via West Street, also reach the county road.

Lake Street was dedicated to public use in 1883 by the plat of Bennett's Addition to Covington, filed in that year. However, the portion of the street here involved has never been graded or otherwise improved by the township, and its use as a thoroughfare by the public generally has not been extensive.

On August 14, 1942, on application of the Baldwins, the district court made an order fixing September 8 as the date of hearing on their petition to vacate the portion of Lake Street which has been described. Pursuant to directions contained in the order for hearing, it was duly published and posted and a copy served upon the chairman of the township of Excelsior. The order did not direct service upon appellants, and they were not personally served, nor did they have actual notice of the proceedings until after a decree of vacation was entered.

When the matter came on to be heard in district court no opposition appeared. The trial court, after hearing the petitioners, made appropriate findings, including one following the language of the petition, viz.:

"That the portion of said Lake Street so described is useless for the purposes for which said street was laid out; that all of the property owners abutting on said portion of said street are desirous of having it vacated, and that said portion of said street is now of no use to your petitioners or to any other person for the purposes for which said street was laid out."

A decree vacating the described portion of Lake Street was accordingly entered on September 14, 1942.

14

All was well until the following spring, when the Bergrens moved back to the lake for the summer. With apparent innocence, they began using the vacated portion of Lake Street as a means of access to their cottage. But, about June 1, Arne Bergren received a telephone call from the attorney for the Baldwins warning him to discontinue the use of the vacated street "or else he would be subject to legal process for doing so." Bergren immediately engaged his present attorney to investigate what had happened. With proper diligence, notice of a motion to set aside the 1942 decree and to permit the Bergrens to appear in opposition to the vacation of the street was served upon the Baldwins, as well as upon the occupant and record owner of other abutting property, and upon the chairman of the town board. A copy of notice of motion was also posted in three public places in the township.

Only the Baldwins appeared in formal opposition to the motion to reopen the proceedings. They relied mainly upon the claims (1) that the Bergrens had not been deprived of access to their premises, because West Street was available to them; (2) that Lake Street had not been used as a street or thoroughfare until 1940, when the Baldwins filled in a portion of Lake Street adjacent to the county road and commenced improvements on their own property; and (3) that the vacated part of Lake Street "is useless to the public for the purposes for which it was laid out, has never been used by the public or by anyone for purposes as a street, and the public interests are best served by not using said platted street, in view of the location of said street and the complete accessibility of the public to the shores of Lake Minnetonka at the southerly end of West Street."

Supporting the Baldwins in their efforts to prevent a reopening of the proceedings were the three town supervisors, who by affidavit asserted that, upon being served with notice of the original hearing in 1942, they had made a complete investigation and had concluded that the portion of Lake Street here involved "was no good for the purpose for which it was laid out and that there would be a *benefit* accruing to the public by the proposed vacation." The

supervisors further deposed "that no useful purpose would be served and that the interest of the public would be *prejudiced* by order of this court setting aside the decree." Just what benefit the public would derive from the vacation of the street, other than being saved the minor expense of maintaining 150 feet of it, or what prejudice would result to the public from setting aside the decree does not appear from these affidavits and must remain a mystery.

Notwithstanding the timely motion made by appellants, the district court, by order dated September 23, 1943, refused to set aside its former decree so as to permit appellants to be heard in opposition to the application to vacate the street. The appeal is from that order.

■ Throughout the proceedings below, the abutting owners have emphasized the nonuse of the vacated portion of Lake Street as a street or thoroughfare and the fact that appellants have another street as a means of access to their property. Appellants, on the other hand, have stressed the claim of damage to their own property caused by the vacation. Apparently lost in the shuffle were the rights of the public in the lake itself, for neither party seems to have given much consideration to the value of Lake Street, located as it is on the shores of St. Albans Bay, in providing lake frontage and shore line for the use of the public for recreational purposes. Lake Street having been located by the plat of Bennett's Addition on the shore of the bay, its dedication to the use of the public will be presumed to have been intended "to enable the public to have access to the water for all proper public purposes." In re Petition of Schaller, 193 Minn. 604, 259 N. W. 529, 530 (headnote).

■ The contest here is not a mere bout between private individuals with members of the public acting merely in the role of spectators. The public has a real and substantial interest in the outcome. "The public rights in these lakes, with which this state abounds, are of great value and importance," Witty v. Board of Co. Commrs. 76 Minn. 286, 289, 79 N. W. 112, 113, and this court

16

has always been zealous in protecting them. Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L. R. A. 670, 38 A. S. R. 541; Madsen v. Larson, 117 Minn. 369, 135 N. W. 1003; State v. Korrer, 127 Minn. 60, 148 N. W. 617, 1095, L. R. A. 1916C, 139; Erickschen v. County of Sibley, 142 Minn. 37, 170 N. W. 883; In re Petition of Schaller, *supra;* In re Petition of Krebs, 213 Minn. 344, 6 N. W. (2d) 803; Petraborg v. Zontelli, 217 Minn. 536, 15 N. W. (2d) 174. And where, as here, it is proposed to vacate a street which is located upon a lake shore, the matter should receive "our most careful consideration. * * * the final test is whether the public interests will or will not be best served by discontinuing the way." In re Petition of Schaller, 193 Minn. 614, 259 N. W. 534.

The situation is not unlike that which existed in Erickschen v. County of Sibley, *supra,* involving the drainage of Washington Lake in Sibley county. There the petitioners stressed the benefits to their land which might result from the drainage of the lake, while the objectors in turn dwelt mainly upon the damage to their own lands. But the court (142 Minn. 41, 42, 170 N. W. 884, 885), referring to the "settled policy designed to preserve inland waters which afford recreation to the public," said:

"* * * We have observed that in contested drainage proceedings the petitioners are chiefly interested in adding to their holdings of arable land, while their opponents are concerned over possible damage to their lands as a result of the drainage of those of their neighbors. *In the clash of conflicting private interests, those of the public are apt to drop out of sight. Yet the state, though not a party to nor represented in the proceedings, has real and substantial rights to protect.* * * * It should be the concern of the county board and of the courts to guard the rights of the public, and to preserve for the enjoyment of this and future generations all bodies of water which have present or potential public value." (Italics supplied.)

This court requires no proof that Lake Minnetonka is a priceless heritage of the people of Minnesota, to be preserved and passed

on to posterity. Judicial notice will be taken of the fact that it is one of the most precious pearls in the string of Ten Thousand Lakes, of which Minnesota is so justly proud. Its natural beauty has become the theme of both legend and song. Because of its wide expanse and proximity to our metropolitan areas, it is much frequented and used for boating, fishing, picnicking, and bathing—perhaps more than any other lake in the state. Its shore line of nearly 100 miles is dotted with permanent homes and summer cottages, not only at its water's edge, but extending far back from the shore. But the use of the lake is not confined to dwellers on its shore or nearby. During the summer season especially, it is the mecca for thousands upon thousands of urbanites, not so fortunate as to possess a lake home, who—young and old alike—seek its shores and waters for divers recreational purposes. To those who do not indulge in active recreation, it affords the opportunity of communing with nature at its best. With the increase in the permanent lake population, however, the extent of lake shore available to the public generally and the means of public access to the lake have diminished and, therefore, become increasingly valuable from year to year. All these facts are so commonly known that this court must take them into consideration in disposing of the appeal.

"* * * we must not forget that the public includes persons other than those in the immediate vicinity. The general public has a true concern in the recreational facilities offered by the lakes which nature has so freely given us in this state. Their generous sharing by all will make for a healthier and happier people. The many not fortunate enough to be able to acquire the advantages of ownership of lake shore properties should not be deprived of these benefits. This we would do if we permitted streets leading to the lake shore to be vacated as here proposed." In re Petition of Krebs, 213 Minn. 344, 347, 6 N. W. (2d) 803, 805.

█ Keeping in mind the value to the public of free access to and use of the lake shore, we are at a loss to know how any part of

18

Lake Street has become "useless" within the meaning of that term as commonly defined. The word "useless," which appears in Minn. St. 1941, § 505.14 (Mason St. 1927, § 8244), permitting vacation of a street when it is "useless for the purpose for which it was laid out," should not be given any restricted meaning. Courts should ascribe to it the well-accepted connotation: "not serving or not capable of serving any valuable purpose; being of no use; having or being of no use; unserviceable; producing no good end; answering no desired purpose." Funk & Wagnalls New Standard Dictionary, 1932; Webster's New International Dictionary (2 ed.) 1938.

■ The loss to the public of 150 feet of shore line out of a total of approximately 100 miles may to the Baldwins seem inconsequential or even infinitesimal and nothing to be disturbed about. But, of this 100 miles of precious shore line, only a small fraction has been reserved for the public; and if the courts should create a precedent by permitting a single inroad, however small, upon the public's share of the shore line, other inroads will inevitably follow, until the aggregate becomes a real threat to the public's free access to the lake. To avoid any possibility of such a result, the courts should with equal vigor repulse the first, the second, and every other assault upon the public domain.

If eternal vigilance is the price of preserving the full benefit of Minnesota's lakes for all members of the public—as it is of liberty—public officials must gladly pay that price. They must not stand by, wholly unconcerned, like Nero, who fiddled while Rome burned, and permit public access to our lakes to be cut off or reduced for selfish private purposes. Yet here town supervisors appear to have been entirely oblivious to the full import of the petition, of the filing of which they received notice. Not only did they fail to protest, but they actually gave aid and comfort to the petitioners in their raid upon the public's conservation chest.

The obvious purpose of providing notice to the town supervisors of proceedings to vacate a street or highway is to put these officers on guard, so that the interests of the public may be amply protected. The supervisors of Excelsior township having failed in

their duty in this respect and having permitted a default to be entered, it is at least understandable why the petition was originally granted by the lower court. But when the court's decree vacating the street was promptly attacked by appellants upon their receiving notice of the proceeding, the trial court should have been alert to the public interest and, unhesitatingly, should have reopened it; and this, notwithstanding that appellants' motion to reopen was motivated principally by the anticipated damage to their own property. Not to reopen the proceeding in the public interest was a clear abuse of discretion, and the order denying appellants' motion must be reversed.

If, in view of the importance we have attached to the preservation of our lakes and full access thereto for the public and for posterity, respondents still desire to urge that the portion of Lake Street between their property and St. Albans Bay has become "useless for the purpose for which it was laid out," they will be accorded that privilege. We may not have all the facts. But respondents should understand that any decree of vacation must be supported by clear proof that the street has in fact become "useless" to the public in the full and unrestricted meaning of that term.

Reversed.