**In re the Matter of the Application of Jerry J. BARTH and Nancy J. Barth, husband and wife, To Register the Title to Real Property Situated in Goodhue County, Minnesota, applicants, Respondents,**

v.

**Michael W. STENWICK,
et al., Defendants,**

**Wacouta Township, Goodhue County, Minnesota, Appellant.**

**No. A08–0317.**

Court of Appeals of Minnesota.

Feb. 24, 2009.

Catherine G. Johnson, Vogel & Gorman, PLC, Red Wing, MN, for respondents.

George L. May, May & O'Brien, LLP, Hastings, MN, for appellant.

Considered and decided by JOHNSON, Presiding Judge; SCHELLHAS, Judge; and HUSPENI, Judge.*

## OPINION

SCHELLHAS, Judge.

Appellant township challenges the district court's grant of summary judgment in respondents' action to register title to an area of land that includes a portion of a beach. Appellant claims that the beach is public land. The district court concluded that appellant is estopped from claiming

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

that the beach is public land because in previous registration actions brought by adjoining landowners, appellant did not answer or defend against the actions. The district court also concluded that the beach was not dedicated to public use and that no prescriptive easement over the beach exists for the benefit of the public. Because we determine that collateral estoppel does not preclude appellant's claims in this case and that genuine issues of material fact exist as to whether the beach was dedicated to the public and whether a prescriptive easement exists in favor of the public, we reverse and remand.

## FACTS

This is an appeal from summary judgment granting the application of respondents Jerry J. and Nancy J. Barth (the Barths) to register title to Lot 18 and Lot 19 of Block 6 of Wacouta Beach as well as the land between those lots and Lake Pepin, which is part of a beach known as Sand Beach, located in Wacouta Township.

In 1920, the plat of Wacouta Beach located in Sections 31, 32, and 33, Township 113, Range 13, was filed for record by Edward Lidberg in Goodhue County. The plat includes private lots, Sand Beach, and a dedication of streets and alleys for public use. The plat does not include a dedication of Sand Beach for public use. In 1929, through a warranty deed that describes the property by metes and bounds, Lidberg transferred to Fred O. Green and Carl O. Gustafson all of Block 6, including that portion of Sand Beach adjacent to Block 6. The Barths assert that except for the land that Lidberg dedicated to the public for streets and alleys, Lidberg considered the land deeded to Green and Gustafson to be private. In 1950 and 1960,

Jerry Barth's grandparents acquired Lots 18 and 19, Block 6, respectively. The Barths claim that Jerry Barth's grandparents used the disputed portion of Sand Beach adjoining their land in an actual, open, notorious, continuous, hostile, and exclusive manner under color of title for more than 15 years.[1] In 1982, the Barths acquired ownership of Lots 18 and 19, Block 6, from Jerry Barth's grandparents, and they claim that they used the disputed portion of Sand Beach in an actual, open, notorious, continuous, hostile, and exclusive manner under color of title for more than 15 years.

In 2006, the Barths filed an application in Goodhue County to register title to Lots 18 and 19, Block 6, Wacouta Beach, describing the lots in terms that included the adjacent, disputed portion of Sand Beach. Appellant Wacouta Township (the township) filed an answer alleging that Sand Beach was public property through common-law dedication or constant public use giving rise to a prescriptive easement and alleging that the Barths did not obtain ownership of the disputed part of Sand Beach through adverse possession. In regard to the Barths' adverse-possession claim, the township submitted two affidavits from landowners who stated that members of the public used the disputed portion of Sand Beach and that neither the Barths nor Jerry Barth's grandparents ever posted the disputed area, placed barriers around it, or instructed people not to enter it.

The Barths moved for summary judgment, arguing in part that the township should be collaterally estopped from contesting the Barths' claims because it had not answered or defended against three

---

**1.** In 1972, the Barths constructed a home on Lots 18 and 19, Block 6, and occupied it as their principal residence.

previous claims involving the ownership of other portions of Sand Beach. The three previous claims involved: (1) Richard B. Culp, owner of Lot 12, Block 6, Wacouta Beach, who in 1989 sought to register title to land including Lot 12 and an adjacent portion of Sand Beach; (2) Marya O'Malley, owner of Lots 9–13, Block 4, Wacouta Beach, who in 1998 sought to register title to land including Lots 9–13 and an adjacent portion of Sand Beach; and (3) Michael W. Stenwick and Judith A. Stenwick, owners of Lots 13–23, Block 5, Wacouta Beach, who in 2001 sought to register title to land including Lots 13–23 and an adjacent portion of Sand Beach. The township did not file answers in the previous actions, and default judgment was entered in favor of the landowners in each case. In the O'Malley registration action, the township adopted a specific resolution disclaiming any ownership, rights, or interest in the portion of Sand Beach at issue in that proceeding.

The township opposed the Barths' motion for summary judgment, arguing in part that the Barths should be collaterally estopped from pursuing their registration claim against the township because when J. Thomas Wolner and Peggy Wolner, owners of Lots 8, 9, and 10, Block 6, Wacouta Beach, sought in 2005 to register title to their land along with an adjacent portion of Sand Beach, the township answered and defended against the registration action. Ultimately, the Wolners and the township reached a settlement whereby the Wolners withdrew their claims to the adjacent portion of Sand Beach.[2]

The district court granted summary judgment to the Barths, concluding that the doctrine of collateral estoppel applies to preclude the township's claims to the

portion of Sand Beach at issue in this proceeding because the township did not raise any objection to the previous registration applications of landowners to other adjacent portions of Sand Beach. The district court also concluded that there is no statutory or common-law dedication to the public of Sand Beach, that no prescriptive easement existed over Sand Beach for the benefit of the public, and that the township had no "right, title, estate, interest in or lien on" Sand Beach. This appeal follows.

## ISSUES

I. Did the district court err in applying collateral estoppel against the township?

II. Do genuine issues of material fact preclude summary judgment in favor of the Barths?

## ANALYSIS

### I.

■■■ Collateral estoppel, also known as issue preclusion, prohibits a party from relitigating issues that have been previously adjudicated. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Hauser v. Mealey,* 263 N.W.2d 803, 806 (Minn.1978). "Collateral estoppel precludes the relitigation of issues which are both identical to those issues already litigated by the parties in the prior action and necessary and essential to the resulting judgment." *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982).

■■■ Whether the doctrine of collateral estoppel applies is a mixed question of law and fact and is reviewed de novo. *Falgren v. State, Bd. of Teaching,* 545 N.W.2d 901, 905 (Minn.1996). We review

2. This court exercised no jurisdiction over any of the previous registration actions refer-

enced by the township and the Barths.

a district court's conclusions of law, construction of statutes, and application of the law de novo. *See A & H Vending Co. v. Comm'r of Revenue*, 608 N.W.2d 544, 546–47 (Minn.2000) (reviewing grant of summary judgment by tax court). Where the doctrine of collateral estoppel precludes relitigation of an issue, there is no issue of material fact, and summary judgment is proper. *Ryan v. Progressive Cas. Ins. Co.*, 414 N.W.2d 470, 472 (Minn.App.1987), *review denied* (Minn. Jan. 15, 1988). If collateral estoppel is available, a reviewing court will not reverse a district court's decision to apply the doctrine absent an abuse of discretion. *Pope County Bd. of Comm'rs v. Pryzmus*, 682 N.W.2d 666, 669 (Minn.App.2004), *review denied* (Minn. Sept. 29, 2004).

Collateral estoppel bars the relitigation of an issue when: (1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits in the prior proceeding; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Kaiser v. N. States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984). In addition to these four factors, a court applying collateral estoppel must be convinced that its application is fair. *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 652. Collateral estoppel applies to issues "actually litigated, determined by, and essential to a previous judgment." *In re Application of Hofstad*, 376 N.W.2d 698, 700 (Minn.App. 1985) (quotation omitted). Collateral estoppel is an equitable doctrine, *Colonial Ins. Co. of Cal. v. Anderson*, 588 N.W.2d 531, 533 (Minn.App.1999), and courts do not apply it rigidly but "focus instead on whether an injustice would be worked upon the party upon whom the estoppel is urged," *Nelson v. Am. Family Ins. Group*,

651 N.W.2d 499, 511 (Minn.2002). The party invoking collateral estoppel has the burden of proof. *Wolfson v. N. States Mgmt. Co.*, 221 Minn. 474, 480, 22 N.W.2d 545, 548 (1946).

Collateral estoppel may be used defensively to prevent a plaintiff from asserting a previously litigated claim against the defendant or offensively to foreclose the defendant from relitigating an issue that it previously lost. *Parklane Hosiery*, 439 U.S. at 326 n. 4, 99 S.Ct. at 649 n. 4. "Non-mutual offensive collateral estoppel occurs when a different plaintiff seeks to preclude a defendant from relitigating an issue that the defendant had previously litigated and lost in a prior action." *A & H Vending*, 608 N.W.2d at 547 n. 5 (citing *United States v. Mendoza*, 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 571–72, 78 L.Ed.2d 379 (1984)). The offensive use of collateral estoppel is to be decided on a case-by-case basis depending on whether the prerequisites of a full and fair opportunity to litigate the issue in the prior action and fairness are present. *Nelson*, 651 N.W.2d at 511. Although the application of collateral estoppel, if available, is subject to the broad discretion of the district court, there are reasons for treating the offensive use of collateral estoppel differently from the defensive use of collateral estoppel. *Id.* at 329, 99 S.Ct. at 650. The offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does. *Id.* at 329–30, 99 S.Ct. at 650–51. "[O]ffensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action." *Id.* at 330, 99 S.Ct. at 651. "Allowing offensive collateral estoppel may . . . be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with

one or more previous judgments in favor of the defendant." *Id.*

 In this case, the Barths seek to invoke non-mutual[3] offensive collateral estoppel to foreclose the township from defending against the Barths' land registration action. "A basic prerequisite to the application of collateral estoppel is that the issue now involved is identical to one previously litigated." *Kaiser*, 353 N.W.2d at 907. Here, the judgments arising out of the prior registration actions do not pertain to the same land that is the subject of the Barths' registration action. The fact that the adjudications in the previous actions pertain to land that is not the same land as that which is the subject of this action is particularly significant because the law treats real property as unique. *See Mellin v. Woolley*, 103 Minn. 498, 499–500, 115 N.W. 654, 655 (1908) (stating that a particular tract of land "is a unique thing, not capable of being duplicated" (quotation omitted)). Where real property is the subject of a legal action, a party seeking to invoke collateral estoppel has a heavy burden. Indeed, where real property is the subject of a legal action and is not the identical property at issue in a previous action, the party seeking to invoke collateral estoppel may have an insurmountable burden. *See Milens of Cal. v. Richmond Redevelopment Agency*, 665 F.2d 906, 908 (9th Cir.1982) (holding that since each parcel of real estate in city is unique, doctrine of collateral estoppel did not prevent redevelopment agency from disputing its liability despite earlier case involving same redevelopment agency but different property). We leave that determination for another day.

In this case, because the land sought to be registered by the Barths was not litigated in, determined by, or essential to

any of the three previous actions upon which the Barths rely to invoke the use of collateral estoppel, the issues are not identical and collateral estoppel cannot be used against the township. *See Hofstad*, 376 N.W.2d at 701 (holding that because the determination of a boundary line was not determined in a prior action, res judicata and collateral estoppel did not apply); *see also Milens*, 665 F.2d at 908. Similarly, because the Barths were not parties to the Wolner registration action, we reject the township's argument that the judgment arising out of the stipulation reached in the Wolner registration action has any collateral estoppel effect on the Barths' registration action. *See Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 736 n. 1 (Minn.App.1995) (determining that collateral estoppel does not preclude the litigation of issues that were not addressed in a settlement agreement), *review denied* (Minn. Sept. 28, 1995).

We are also unconvinced that the application of collateral estoppel in this case is fair to the township. In *In re Application of Baldwin*, the supreme court reviewed the vacation of a portion of Lake Street on the shore of Lake Minnetonka. 218 Minn. 11, 12, 15 N.W.2d 184, 185 (1944). The street was dedicated for public use but had "never been graded or otherwise improved by the township" and was not used extensively by the public as a thoroughfare. *Id.* at 13, 15 N.W.2d at 185. The proceeding was originally unopposed in the district court, and the petition was granted. *Id.* Subsequently, individuals moved to reopen the proceedings. *Id.* at 14, 15 N.W.2d at 186. Three town supervisors asserted that the vacated portion of Lake Street was "no good for the purpose for which it was laid out and that there would be a *benefit*

---

**3.** Although the Barths, as adjoining landowners, were joined as defendants in the prior registration actions, they were not plaintiffs in the actions.

accruing to the public by the proposed vacation." *Id.* The supreme court reversed the district court's denial of the motion to reopen the proceedings, stating in part that "[t]he contest here is not a mere bout between private individuals with members of the public acting merely in the role of spectators. The public has a real and substantial interest in the outcome," *id.* at 15, 15 N.W.2d at 186. The supreme court observed that "[t]he public rights in these lakes, with which this state abounds, are of great value and importance, and this court has always been zealous in protecting them." *Id.* at 15–16, 15 N.W.2d at 186 (citation and quotation omitted). While any riparian rights that the Barths could assert if they prevailed are "subordinate to the rights of the public and subject to reasonable control and regulation by the state," *State v. Kuluvar,* 266 Minn. 408, 418, 123 N.W.2d 699, 706 (1963), the public's rights to *land* abutting Lake Pepin is at issue in this case. We conclude that prohibiting the township from defending against the Barths' registration action through the invocation of collateral estoppel is unfair to the public's "real and substantial interest in the outcome" of this action.

The township asserts that non-mutual offensive collateral estoppel should not apply against a governmental entity. *See A & H Vending,* 608 N.W.2d at 547 (prohibiting the use of non-mutual offensive collateral estoppel against the state in a sales-tax case); *Care Inst., Inc.-Maplewood v. County of Ramsey,* 576 N.W.2d 734, 737 (Minn.1998) (refusing to apply non-mutual offensive collateral estoppel against a county in a property-tax case). The Barths argue that these cases should be distinguished on the ground that they are tax cases and pertain to the application of non-mutual offensive collateral estoppel against state governments rather than municipalities. *See Acevedo–Garcia v. Mon-*

*roig,* 351 F.3d 547, 575–76 (1st Cir.2003) (applying non-mutual collateral estoppel analysis in a case with municipal defendants but concluding that lack of full and fair opportunity to litigate issue barred its use). Because we determine that collateral estoppel does not apply in this case, we need not reach the issue of whether non-mutual offensive collateral estoppel may apply against a municipal government in a non-tax case.

## II.

On appeal from summary judgment, a reviewing court must determine whether there are genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). "No genuine issue of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997). A moving party is entitled to summary judgment when "there are no facts in the record giving rise to a genuine issue for trial as to the existence of an essential element of the nonmoving party's case." *Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 847 (Minn.1995).

The district court granted summary judgment to the Barths on the township's claim that the disputed portion of Sand Beach belongs to the public through a common-law dedication to the public. The district court concluded that there was no common-law dedication to the public "of the area designated on the plat as 'Sand Beach.' "

▇▇▇▇ "A common-law dedication is one accomplished otherwise than by a plat executed and recorded as required by statute." *Flynn v. Beisel,* 257 Minn. 531, 539, 102 N.W.2d 284, 291 (1960). "The one

seeking to prove a common-law dedication must show the landowner's intent, express or implied, to have his land appropriated and devoted to a public use, and an acceptance of that use by the public." *Wojahn v. Johnson*, 297 N.W.2d 298, 306–07 (Minn. 1980). "The right of the public is determined to exist because of the individual use of the land by members of the public. Whenever the public is determined to have such right of use, it is one that members of the public, unlimited in number, can exercise." *Flynn*, 257 Minn. at 536, 102 N.W.2d at 289. "Both intent and acceptance can be inferred from longstanding acquiescence in the right of the public" to use the land and "from acts of public maintenance." *Wojahn*, 297 N.W.2d at 307.

> [D]edication rests upon intent and not upon prescription. It is the rule, laid down by this court, that, although there can be no dedication without the landowner's intent, such requisite intent need not be express and in fact need not actually exist in the owner's mind, but may be implied from acts and conduct of the owner which are unequivocally and convincingly indicative of dedication and upon which the public has a right to and does rely.

*Flynn*, 257 Minn. at 540, 102 N.W.2d at 291. "[A]cquiescence, without objection, in [a] public use for a long time, is such conduct as proves and indicates to the public an intention to dedicate." *Dickinson v. Ruble*, 211 Minn. 373, 374, 1 N.W.2d 373, 374 (1941).

> Acceptance of a dedication may be shown by a user on the part of the public, as by travel, and where riparian rights are involved, devotion to public use, including various uses of recreational purposes such as sailing, rowing, fishing, bathing, skating, taking water for domestic, agricultural, and even city

purposes, cutting ice and wood, hauling the same, and by other public purposes. *Flynn*, 257 Minn. at 540, 102 N.W.2d at 291. "Whenever the evidence is in conflict as to whether the owner intended to dedicate and whether the public accepted the dedication, then the ultimate question of dedication is peculiarly one for the finder of fact." *Id.*

In *Dickinson*, the supreme court affirmed a determination that a common-law dedication had occurred where the district court based its finding on a stipulation of the parties that

> [f]or more than fifteen (15) years immediately prior to the construction of said building, said premises, and particularly the said strip of land so used as a driveway, has been openly, adversely, and continuously used by the defendant, his cotenants, predecessors in title, tenants, and by the public in general, as an alleyway or passageway with vehicles between Benson and Pacific avenues in the City of Willmar.

211 Minn. at 374, 1 N.W.2d at 374. The supreme court concluded:

> Reasonable minds cannot but repel a suggestion that a resident owner knows nothing of a public use of property which is open, obvious and uninterrupted for more than 15 years. Under our decisions only long-continued, uninterrupted use by the public need be proved to establish the owner's acquiescence from which the intention to dedicate is inferred,

*id.* at 376, 1 N.W.2d at 374 (citation and quotation omitted).

> Proof of some particular period of public use is not a prerequisite to dedication though the weight that will be attached to such public use as evidence of acquiescence will vary proportionally with its length. Ultimately, the conclusion is reached that the public accommodation

and private rights might be materially affected by an interruption of the enjoyment. Even subtracting the three years [that the public used part of the land as a parking lot referable to a lease held by the city and not to the dedication], there is enough of public use not referable to the lease to allow a strong inference of acquiescence and of prejudice to the public and defendant from interruption. *Id.* at 376, 1 N.W.2d at 375 (citations and quotation omitted).

Both parties in this case moved the district court for summary judgment. The township submitted a report from the examiner of titles in which the examiner opines that Lidberg "made and dedicated to the public the 'Sand Beach' area adjoining the Waterfront lots of Block 6 of Wacouta Beach." In a separate report, the examiner states that at the time of the application, the Barths were the record owners of Lots 18 and 19 only and their attempt to register the disputed portion of Sand Beach is an attempt to register "more land than they have received by deed." While the Barths argue that Lidberg deeded Sand Beach to private parties in 1929, which is inconsistent with dedicating Sand Beach to the public, the examiner asserts that Lidberg's intention to deed this property in 1929 "is of no validity if contrary to his dedication to the public in 1920," and also asserts that there is no chain of title from the 1929 deed to the Barths. The examiner of titles further opined that Block 6 is platted in a way that supports the conclusion that the portion of Sand Beach adjoining Block 6 was dedicated for public use. The report of the examiner of titles reasonably supports a conclusion that a common-law dedication of Sand Beach for public use occurred and, at the very least, raises a genuine issue of material fact regarding the existence of such a dedication. Summary judgment therefore was inappropriate. *See DLH*, 566 N.W.2d at 69 ("[S]ummary judgment is inappropriate when reasonable persons might draw different conclusions from the evidence presented.").

The district court also granted summary judgment to the Barths on the township's claim that the public has a prescriptive easement over the disputed portion of Sand Beach. A party seeking to establish a prescriptive easement must show that its use of the land "was hostile, actual, open, continuous, and exclusive" for 15 years. *McCuen v. McCarvel*, 263 N.W.2d 64, 65 (Minn.1978). The township asserts that the two affidavits it submitted from residents claiming to have used Sand Beach establish "the public's usage of the entire Sand Beach area for recreational purposes." We conclude that these affidavits present a genuine issue of material fact as to whether a prescriptive easement over the disputed portion of Sand Beach exists and that summary judgment was therefore inappropriate on this issue.

The township also argues that a genuine issue of material fact exists as to whether the Barths adversely possessed the disputed land. The district court did not reach a conclusion as to this issue, merely noting that the Barths claimed to have acquired the land through adverse possession. If the disputed portion of Sand Beach was public property at the time the Barths allegedly adversely possessed it, the Barths' adverse possession claim must fail as a matter of law. *See* Minn.Stat. § 541.01 (2008) (providing that land "dedicated or appropriated to public use" cannot be acquired by adverse possession). But we leave this issue for the district court to consider on remand if necessary.

## DECISION

Because (1) collateral estoppel does not apply to the township, the district court

erred in applying it against the township and prohibiting the township from asserting its defenses in this registration action, and (2) genuine issues of material fact exist as to whether the land was dedicated to the public and whether the public has a prescriptive easement over the land, we reverse and remand.

**Reversed and remanded.**