**ALL FINISH CONCRETE, INC., Respondent,**

v.

**Roger ERICKSON, Appellant.**

**A16-1780**

Court of Appeals of Minnesota.

Filed July 3, 2017

Jon R. Brakke, Drew J. Hushka, Vogel Law Firm, Fargo, North Dakota (for respondent).

Mark R. Hanson, Nilles Law Firm, Fargo, North Dakota (for appellant).

Considered and decided by Halbrooks, Presiding Judge; Schellhas, Judge; and Smith, John, Judge.*

## OPINION

SMITH, JOHN, Judge

We affirm the judgment entered on a creditor's suit that pierces the corporate veil to hold appellant personally liable for a judgment entered against a corporation in a previous action because the district court

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

correctly (1) rejected appellant's argument that recovery was barred by the creditor's failure to exhaust remedies, laches, and unclean hands; (2) applied offensive collateral estoppel to hold appellant liable; and (3) amended the judgment to award post-judgment interest on the judgment.

## FACTS

Appellant Roger Erickson (Erickson) formed Erickson Contracting of Fargo-Moorhead, Inc. (Erickson Contracting) in 1988. Erickson Contracting is a construction business that is set up as a corporation, and Erickson is the sole shareholder, officer, and director of the corporation.

On May 4, 2012, respondent All Finish Concrete, Inc. (All Finish) obtained a judgment against Erickson Contracting in the amount of $33,849.58. Several years later, All Finish brought this action to recover the entire judgment sum from Erickson personally under a corporate veil-piercing theory. All Finish moved for summary judgment, claiming that a prior decision involving Erickson and a different judgment creditor should be afforded collateral-estoppel effect in the instant action to make Erickson personally liable under the "alter ego" theory of corporate veil piercing. *See Stenerson Bros. Lumber Co. v. Erickson,* No. 14-CV-12-1525 (Minn. Dist. Ct. Aug. 28, 2013). Erickson moved for summary judgment arguing that All Finish failed to exhaust legal remedies before filing this suit. Erickson also argued for dismissal of All Finish's claims under the doctrines of laches and unclean hands.

The district court denied Erickson's motion for summary judgment, granted All Finish's motion for summary judgment, and entered judgment against Erickson in

Minn. Const. art. VI, § 10.

the amount of $33,849.58. All Finish moved to amend the judgment, claiming that it was entitled to postjudgment interest against Erickson Contracting from the May 2012 judgment. The district court granted All Finish's motion to amend the judgment. The amended judgment was entered "in the amount of $39,838.91, the amount of the underlying judgment plus interest at the statutory rate from May 4, 2012, the date that judgment was entered against Erickson Contracting, through the date of this order."

## ISSUES

I. Did the district court err in denying Erickson's motion for summary judgment because All Finish's recovery was barred by the doctrines of laches and unclean hands, and it failed to exhaust legal remedies?

II. Did the district court err in granting All Finish's motion for summary judgment by applying offensive collateral estoppel?

III. Did the district court err by amending the judgment to award postjudgment interest to All Finish?

## ANALYSIS

### I.

A district court must grant a motion for summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court reviews de novo whether there are genuine issues of material fact and whether the

district court erred in applying the law. *Commerce Bank v. West Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). We need not adopt the reasoning of the district court, and "may affirm a grant of summary judgment if it can be sustained on any grounds." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012).

Erickson argues that All Finish's claims are barred by (A) the failure to exhaust legal remedies; (B) the doctrine of latches; and (C) the doctrine of unclean hands. Thus, Erickson argues that the district court erred by denying his motion for summary judgment.

### A. Failure to exhaust legal remedies

A creditor's suit/creditor's bill[1] is "an equitable action to satisfy a judgment 'out of the equitable assets of the debtor which could not be reached on execution.'" *Brakemeier v. Wittek*, 386 N.W.2d 408, 410 (Minn.App. 1986) (quoting *Wadsworth v. Schisselbaur*, 32 Minn. 84, 86, 19 N.W. 390, 390 (1884)). A creditor's suit is "'in essence an equitable execution comparable to proceedings supplementary to execution.'" *Id.* (quoting *Pierce v. United States*, 255 U.S. 398, 401-02, 41 S.Ct. 365, 366, 65 L.Ed. 697 (1921)). In Minnesota, a creditor's suit is ancillary to the original judgment. *Newell v. Dart*, 28 Minn. 243, 249, 9 N.W. 732, 733 (1881). It is not "an action brought upon the judgment as a cause of action, in order to obtain a new judgment, but simply an action ancillary to and for the purpose of obtaining satisfaction of, an existing judgment." *Id.* at 249-50, 9 N.W. at 733. The general rule is that a creditor must "first exhaust his remedy at law by the issuance of an execution and its return unsatisfied, for until then the remedy at

<hr/>

1. The term "creditor's suit" is synonymous with the term "creditor's bill." *See Black's* *Law Dictionary* 376 (7th ed. 1999).

law ha[s] not been shown to be inadequate." *Brakemeier*, 386 N.W.2d at 410 (quotation omitted).

It is undisputed that the action brought by All Finish is in the nature of a creditor's suit. As such, Erickson contends that All Finish "must show that it exhausted its remedies at law by issuing an execution on the May 4, 2012 judgment against [Erickson Contracting] that was returned unsatisfied." Erickson argues that because "it is undisputed" that All Finish did not make any attempt to recover on its judgment, All Finish failed to exhaust its remedies. For these reasons, Erickson argues that the district court erred by denying his motion for summary judgment.

To support his claim that the district court erred in denying his motion for summary judgment, Erickson relies on *Brakemeier* and *Amica Mut. Ins. Co. v. Wartman*, 841 N.W.2d 637 (Minn.App. 2014), *review denied* (Minn. Mar. 18, 2014). In *Brakemeier*, this court noted that in a creditor's suit, the general rule is that the creditor is "required to first exhaust his remedy at law by the issuance of an execution and its return unsatisfied." 386 N.W.2d at 410 (quotation omitted). This court concluded that the district court correctly determined that the *Brakemeier* creditors could not recover from the debtor because they did not present any evidence that execution was returned unsatisfied. *Id.*

In *Wartman*, a homeowners' insurer obtained a judgment against a construction company and then brought an action against the owner and sole shareholder of that construction company, seeking to pierce the corporate veil and hold the owner personally liable for the judgment. 841 N.W.2d at 639. This court noted that "[h]istorically, a party could bring a suit in the form of a pleading known as a credi-

tor's [suit]." *Id.* at 641. In Minnesota, there were two types of creditor's suits in equity:

> The first was where the judgment creditor sought to satisfy his judgment out of the equitable assets of the debtor which could not be reached by execution. The second was where the property legally liable to execution had been fraudulently conveyed and the creditor attempted to have the conveyance set aside.

*Id.* (quoting *Lind v. O.N. Johnson Co.*, 204 Minn. 30, 36, 282 N.W. 661, 665-66 (1938)). The first type of creditor's suit requires the creditor to exhaust its remedy at law by having an execution returned unsatisfied. *Id.* But, for the second type, the creditor is not required to first exhaust its other remedies. *Id.*

All Finish argues that under *Wartman*, it was not required to exhaust remedies. We agree. The first type of creditor's suit, which is codified in chapter 575 of the Minnesota Statutes, occurs when the creditor is seeking to satisfy a judgment out of the assets of the *debtor* that could not be reached by execution. *See Lind*, 282 N.W. at 665-66. Here, the debtor is Erickson Contracting. All Finish is not seeking to satisfy the judgment from Erickson Contracting. Rather, All Finish is seeking to satisfy the judgment from Erickson because Erickson Contracting is insolvent due to Erickson's alleged fraudulent activity by Erickson. This action falls squarely into the second type of creditor's suit, where property subject to execution had been fraudulently conveyed and the creditor attempted to have the conveyance set aside. *See Lind*, 282 N.W. at 665-66.

Erickson argues that All Finish's claim cannot fall into the second type of creditor's suit because it makes "no claim in the complaint of a fraudulent conveyance or that All Finish has ever sought to set aside a specific conveyance." But All Finish's complaint alleged that Erickson (1) did not

adequately capitalize Erickson Contracting; (2) failed to observe corporate formalities; (3) "siphoned assets from Erickson Contracting" for his benefit; (4) operated Erickson Contracting as "his alter ego"; and (5) caused Erickson Contracting to incur debt when he knew the company was insolvent. The allegations in All Finish's complaint, although not using the word fraud, are framed as a fraudulent claim. All Finish sought to pierce the corporate veil based on this fraudulent conduct. *See Roepke v. Western Nat'l Mut. Ins. Co.*, 302 N.W.2d 350, 352 (Minn. 1981) ("The practice of piercing the corporate veil is generally a creditor's remedy used to reach an individual who has used a corporation as an instrument to defraud creditors."). All Finish's action to pierce the corporate veil to hold Erickson liable for his fraudulent transfer of corporate funds to himself falls under the second type of creditor's suit discussed in *Lind*. Thus, All Finish was not required to exhaust other legal remedies before bringing this action.

### B. Laches

▆▆▆▆ Erickson also contends that All Finish's claim fails under the equitable doctrine of laches. This doctrine is equitable in nature and "applie[s] to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Monaghen v. Simon*, 888 N.W.2d 324, 328 (Minn. 2016) (quotation omitted). The application of the doctrine of laches usually depends on the facts of the case. *Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953). In deciding whether to apply laches, a court must determine "whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for." *Carlson v. Ritchie*, 830 N.W.2d 887, 891 (Minn. 2013) (quotation

omitted). This court applies an abuse-of-discretion standard of review to a district court's summary-judgment decision based on laches. *Jackel v. Brower*, 668 N.W.2d 685, 690 (Minn.App. 2003), *review denied* (Minn. Nov. 25, 2003).

The supreme court has held that when an action is governed by a statute of limitations, laches does not apply. *M.A.D. v. P.R.*, 277 N.W.2d 27, 29 (Minn. 1979). "An exception exists in equitable actions when a party can show that delay would result in substantial injury to innocent parties." *In re: Appeal from Final Order of the Bd. of Managers*, 889 N.W.2d 575, 580 (Minn. App. 2016), *review denied* (Minn. Mar. 28, 2017).

As the district court found, this action is governed by Minn. Stat. §§ 548.06, subd. 1 (2016); 541.04 (2016). Those statutes provide that once a judgment is docketed, it exists for ten years as a lien upon the judgment debtor's real property. Minn. Stat. § 548.09, subd. 1 (2016). Further, "no action shall be maintained upon a judgment or decree of a court of the United States, or of any state or territory thereof, unless begun within ten years after the entry of such judgment." Minn. Stat. § 541.04.

Here, All Finish obtained a judgment against Erickson Contracting in May 2012. Under section 548.09, subd. 1, All Finish had ten years to collect on that judgment. *See* Minn. Stat. § 541.04. All Finish's action to collect on the May 2012 judgment was brought within the ten-year period as prescribed in section 548.09, subdivision 1. Therefore, because the proceedings brought by All Finish are governed by a statute of limitations, the district court did not err by concluding that the doctrine of laches does not apply.

Erickson argues that the ten-year statute of limitations set forth in Minn. Stat.

§§ 548.09, subd. 1, 541.04 is not applicable because *Wartman* concluded that a veil-piercing action is not an action on a judgment within the meaning of section 541.04. But Erickson misconstrues the holding of *Wartman*. In *Wartman*, this court recognized that an action upon a judgment is controlled by the ten-year statute of limitations established in section 541.04, *Wartman*, 841 N.W.2d at 640, and also recognized that in order to extend the ten-year statute-of-limitations period prescribed by section 541.04, a creditor must bring suit to collect on that judgment within the ten-year period. *Id.* at 644. The holding was that the action brought in that case was not an action within the meaning of section 541.04 and, therefore, the action to pierce the corporate veil did not extend the statute-of-limitations period beyond the ten-year period. *Id.* at 643. This court concluded that although the creditor commenced its veil-piercing action before the underlying judgment expired, it failed to obtain an extension or renewal of the underlying judgment before its expiration by operation of section 541.04. *Id.* (holding that creditor's action on the underlying judgment was time barred under section 541.04). Thus, Erickson's argument that the ten-year statute of limitations is inapplicable under *Wartman* is without merit because that case specifically states that an action to collect on a judgment is subject to the ten-year limitations period prescribed in section 541.04, and a creditor's suit to pierce the corporate veil is simply ancillary to the underlying judgment and does not alter the statute-of-limitations period.

Erickson further argues that the doctrine of laches is applicable because, regardless of the statute-of-limitations period, he was prejudiced by All Finish's decision to wait almost four years after the judgment against Erickson Contracting was entered before bringing this action to pierce the corporate veil. He argues that he was prejudiced because "he will now be personally liable for a judgment that was not entered against him, versus having the judgment paid from any available assets that [Erickson Contracting] had in 2012—when the judgment was entered." Erickson claims that "at the very least," there is an issue of material fact as to whether he was prejudiced.

We disagree. As stated above, All Finish had 10 years to bring an action to collect on the judgment. *See* Minn. Stat. § 541.04. In order to establish prejudice in an action brought within this ten-year period, Erickson must show that he was an innocent party affected by unreasonable delay. *See Aronovitch*, 238 Minn. at 241, 56 N.W.2d at 574. But the undisputed evidence demonstrates that Erickson engaged in fraudulent conduct in his administration of Erickson Contracting. Moreover, Erickson offers no evidence that Erickson Contracting had any assets that would have satisfied the judgment at the time it was entered. It is well settled that, "[t]o defeat summary judgment, the nonmoving party must do more than merely create a metaphysical doubt as to a factual issue or rest on mere averments." *Doe 175 v. Columbia Heights Sch. Dist.*, 873 N.W.2d 352, 359 (Minn.App. 2016) (quotations omitted). Accordingly, the district court did not abuse its discretion by declining to apply the doctrine of laches.

## C. Unclean hands

Erickson also challenges the district court's rejection of his unclean-hands defense. This defense bars a party who has acted inequitably from obtaining equitable relief. *See Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999). The unclean-hands doctrine is premised on withholding equitable relief from a party guilty

of illegal or unconscionable conduct. *Fred O. Watson Co. v. U.S. Life Ins. Co.*, 258 N.W.2d 776, 778 (Minn. 1977). "Unclean hands" requires more than "improper purpose" or recklessness; it requires illegal or unconscionable conduct or a showing of bad faith. *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 450 (Minn. App. 2001).

The district court concluded that Erickson "furnished no evidence that All Finish engaged in unconscionable conduct by reason or bad motive." Erickson argues that this decision is erroneous because the plain and ordinary meaning of "unconscionable" is "going far beyond what is usual and proper." Erickson contends that it is "usual and proper for a business to seek to collect a debt from all available sources," and that All Finish failed to adhere to this standard when trying to collect on its debt by not bringing "its claim directly against Erickson at the time it sued [Erickson Contracting] and did not, and still has not, ever sought to collect that judgment."

Erickson's argument is without merit. As iterated above, Minnesota law allows a creditor ten years to collect on a judgment. *See* Minn. Stat. § 541.04. Because a creditor is allowed ten years to collect on a judgment, it is not improper for a creditor to wait four years to bring an action to pierce the corporate veil to collect on a judgment. And, as the district court found, there is no evidence that All Finish sought to pierce the corporate veil for an improper purpose. Finally, Erickson is not entitled to this equitable relief because he displayed unclean hands in the fraudulent administration of Erickson Contracting. For all of these reasons, the district court did not err by rejecting Erickson's unclean-hands defense.

## II.

Collateral estoppel, also known as issue preclusion, prohibits a party from relitigating issues that have been previously adjudicated. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn. 1978). "Collateral estoppel precludes the relitigation of issues which are both identical to those issues already litigated by the parties in the prior action and necessary and essential to the resulting judgment." *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982).

Whether the doctrine of collateral estoppel applies is a mixed question of law and fact, and is reviewed de novo. *Falgren v. State, Bd. of Teaching*, 545 N.W.2d 901, 905 (Minn. 1996). "Where the doctrine of collateral estoppel precludes relitigation of an issue, there is no issue of material fact, and summary judgment is proper." *Barth v. Stenwick*, 761 N.W.2d 502, 508 (Minn.App. 2009). We will not reverse a district court's decision to apply the doctrine of collateral estoppel absent an abuse of discretion. *Pope Cty. Bd. of Comm'rs v. Pryzmus*, 682 N.W.2d 666, 669 (Minn.App. 2004), *review denied* (Minn. Sept. 29, 2004).

Collateral estoppel is an equitable doctrine and courts do not apply it rigidly, but instead focus on whether an injustice would be worked upon the party upon whom estoppel is urged. *Barth*, 761 N.W.2d at 508. Collateral estoppel bars the relitigation of an issue when:

(1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Kaiser v. N. States Power Co.,* 353 N.W.2d 899, 902 (Minn. 1984) (quotation omitted). In addition to these four factors, a court must be convinced that its application is fair. *Parklane Hosiery,* 439 U.S. at 331, 99 S.Ct. at 652.

 Collateral estoppel may be used defensively to prevent a plaintiff from asserting a previously litigated claim against the defendant or offensively to foreclose the defendant from relitigating an issue that it previously lost. *Id.* at 326 n.4, 99 S.Ct. at 649 n.4. "Non-mutual offensive collateral estoppel occurs when a different plaintiff seeks to preclude a defendant from relitigating an issue that the defendant had previously litigated and lost in a prior action." *Barth,* 761 N.W.2d at 508 (quotation omitted). The use of offensive collateral estoppel is to be decided on a case-by-case basis, depending on whether the defendant had a full and fair opportunity to litigate the issue in the prior action and whether estoppel of the defendant would be fair. *Nelson v. Am. Family Ins. Grp.,* 651 N.W.2d 499, 511 (Minn. 2002).

 Here, the district court concluded that, in light of the *Stenerson Bros.* decision, All Finish "produced sufficient factual evidence to establish that offensive collateral estoppel precludes relitigation of its veil-piercing claim." Erickson challenges the district court's conclusion, arguing that the collateral-estoppel factors have not been satisfied. He also claims that the use of non-mutual offensive collateral estoppel is unfair in this case. Finally, Erickson argues that there are genuine issues of material fact that preclude summary judgment.

### A. Collateral estoppel factors

Erickson challenges only the first and fourth collateral estoppel factors, arguing that the issue All Finish seeks to preclude is not identical to the issue adjudicated in the *Stenerson Bros.* action, and that he did not have a full and fair opportunity to be heard. But because offensive collateral estoppel is to be applied cautiously and all factors must exist for a party to be collaterally estopped, we analyze all four factors to determine whether the application of offensive collateral estoppel was proper.

### 1. Degree of similarity of the issues

 "A basic prerequisite to the application of collateral estoppel is that the issue now involved is identical to the one previously litigated." *Barth,* 761 N.W.2d at 508 (quotation omitted). "The issue must have been distinctly contested and directly determined in the earlier adjudication...." *Hauschildt v. Beckingham,* 686 N.W.2d 829, 837-38 (Minn. 2004). For collateral-estoppel purposes, issues are identical when "the issues presented by [the current] litigation are in substance the same as those resolved" in the previous litigation. *Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).

In the *Stenerson Bros.* action, the creditor brought claims against Erickson, d/b/a Erickson Contracting for money owed by Erickson Contracting, and sought to pierce the corporate veil of Erickson Contracting to find Erickson personally liable for the corporation's outstanding debt to Stenerson. This is identical to the issue presented here; whether All Finish is entitled to pierce the corporate veil to hold Erickson personally liable for an outstanding debt.

Erickson argues that the *Stenerson Bros.* action is not identical to the present action because the district court's findings in *Stenerson Bros.* "included financial information on another entity in which ... Erickson is one of the personal owners— Farmstead Estates." But the facts of the two cases need not be identical, as long as

any factual differences have no "legal significance" in "resolving the issue presented in both cases." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172, 104 S.Ct. 575, 579, 78 L.Ed.2d 388 (1984).

Here, the relevant legal issue is whether the parties in each of the cases were entitled to pierce the corporate veil and hold Erickson personally liable for his debts. Piercing the corporate veil is an equitable remedy that may be applied when a party acts as the alter ego of a corporate entity. *Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn.App. 2009). "When using the alter ego theory to pierce the corporate veil, courts look to the reality and not [the] form, with how the corporation operated and the individual defendant's relationship to that operation." *Id.* (quotation omitted). A court may consider whether the corporate entity (1) is insufficiently capitalized; (2) fails to observe corporate formalities; (3) is insolvent; (4) fails to maintain corporate records; or (5) exists as a mere facade for individual dealings. *Id.*

The district court in *Stenerson Bros.* considered the above-mentioned factors and concluded that Erickson served as the alter ego of Erickson Contracting. Moreover, the *Stenerson Bros.* court found that "[f]rom 2009 to 2011, Erickson received ... transfers from Erickson Contracting" totaling $775,770.56. This finding establishes that Erickson Contracting incurred debt from Stenerson during the same period in which it incurred debt from All Finish. Although the creditor in this case is different than the creditor in *Stenerson Bros.*, the facts related to the creditors are not material to the dispute. The material facts consist of Erickson's actions as they applied to Erickson Contracting. The district court in *Stenerson Bros.* made detailed findings that (1) Erickson insuffi-

ciently capitalized Erickson Contracting; (2) Erickson Contracting was insolvent between 2009 and 2011; (3) Erickson siphoned funds from Erickson Contracting between 2009 and 2011; (4) Erickson kept inadequate corporate records; and (5) Erickson Contracting existed substantially as a facade for Erickson's individual dealings. These same facts apply to the action brought by All Finish. Because the legal issue in *Stenerson Bros.* is the same as the legal issue presented here, and the facts material to that issue are the same in both cases, the district court did not err by concluding that All Finish satisfied this factor.

### 2. Final judgment on the merits

A final judgment is defined as one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *T.A. Schifsky & Sons, Inc. v. Bahr Constr., LLC*, 773 N.W.2d 783, 788 (Minn. 2009). Under this definition, this factor is satisfied here. Following a bench trial in the *Stenerson Bros.* matter, the district court issued a final order with complete factual findings and a memorandum concluding that Erickson was personally liable for the debts of Erickson Contracting. Thus, the *Stenerson Bros.* matter led to a final judgment on the merits on the relevant issue.

### 3. Party to the prior adjudication

A party will be estopped from relitigation of an issue only if the party was either a party to or in privity with a party to the prior adjudication. *Kaiser*, 353 N.W.2d at 902. A party is in privity with a party to the prior litigation if the party (1) had a controlling participation in the first action, (2) had an active self-interest in the previous litigation, or (3) had a right to appeal from a prior judgment. *State ex rel. Friends of the Riverfront v. City of Min-*

*neapolis*, 751 N.W.2d 586, 592 (Minn.App. 2008), *review denied* (Minn. Sept. 23, 2008).

The undisputed facts in this case demonstrate that Erickson was a party to the prior adjudication. Although the defendant in the *Stenerson Bros.* action is "Roger Erickson, d/b/a/ Erickson Contracting," this distinction is not significant. Erickson had a "controlling participation" in the *Stenerson Bros.* case, as reflected by his being president and sole shareholder of the corporation. He also had an active self-interest in the previous litigation since he would be personally liable if the veil-piercing in that action was successful. Finally, Erickson had a right to file an appeal in the *Stenerson Bros.* action. Therefore, this factor is satisfied.

### 4. Full and fair opportunity to be heard

■ The determination of whether a party had a full and fair opportunity to litigate "generally focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001) (quotation omitted).

Erickson argues that factual differences between this case and *Stenerson Bros.* deprived him of a full and fair opportunity to be heard in this matter. Specifically, he argues that the action in *Stenerson Bros.* "focused on projects in which Erickson had a personal ownership or involvement, including Farmstead Estates, homes constructed for Erickson's children, and a bar constructed for Erickson's son," which are "different projects than the work shown in the All Finish invoices." But as explained above, these facts are immaterial to whether Erickson served as the alter ego of

Erickson Contracting. The facts relevant to the alter-ego issue concern Erickson's conduct in operating Erickson Contracting, and are the same facts relevant to the issue in this case. Erickson had no procedural limitations in litigating that issue in *Stenerson Bros.*, nor was he limited by the nature or relationship of the parties. Moreover, there is no indication that he lacked an incentive to fully litigate the matter.

■ Erickson also argues that All Finish cannot satisfy this factor because the test to be applied in determining whether to pierce the corporate veil requires a consideration of the relationship between Erickson Contracting and All Finish. We do not agree that this factor remained unsatisfied. In determining whether the corporate entity should be disregarded, courts apply a two-prong test. *White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn. 1982). The first prong requires the application of eight factors to determine the shareholder's relationship to the corporation. *Id.* The second prong of the test requires a showing that piercing the corporate veil is necessary to avoid injustice or fundamental unfairness. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997). This prong examines the relationship of the plaintiff to the corporation and focuses on whether "evidence that the corporate entity has been operated as a constructive fraud or in an unjust matter [was] presented." *White*, 322 N.W.2d at 607-08 (quotation omitted).

In analyzing the second prong, the district court in the *Stenerson Bros.* action focused on Erickson's actions and his breach of "fiduciary duties to Erickson Contracting and its *other* creditors." (Emphasis added.) As a result, the district court's analysis was not limited to the relationship between Erickson Contracting and Stenerson. Moreover, the crux of this prong is an analysis of whether the corporation "has been operated as a construc-

tive fraud or in an unjust manner." *Miller & Schroeder, Inc. v. Gearman*, 413 N.W.2d 194, 196 (Minn.App. 1987) (quotation omitted), *review denied* (Minn. Dec. 18, 1987). The district court's analysis of this prong focused on Erickson's fraudulent conduct, which was directly applicable to this action. Therefore, Erickson had a full and fair opportunity to be heard on this issue in the *Stenerson Bros.* action. The district court did not err by concluding that all four collateral estoppel factors were satisfied.

### B. Fairness in the application of collateral estoppel

 Erickson argues that the application of offensive collateral estoppel is unfair because it was unforeseeable that the May 2012 default judgment could be used against him personally based on any subsequent judgment. Even if the four factors applicable to the doctrine of collateral estoppel are satisfied, the doctrine should only be applied if its application is fair. *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 652. Although the application of collateral estoppel, if available, is subject to the broad discretion of the district court, there are reasons for treating the offensive use of collateral estoppel differently from the defensive use of collateral estoppel. *Id.* at 329, 99 S.Ct. at 650. For example, offensive collateral estoppel does not promote judicial economy in the same manner as defensive use does. *Barth*, 761 N.W.2d at 508. Moreover, "offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action." *Id.* (quoting *Parklane Hosiery*, 439 U.S. at 330, 99 S.Ct. at 651). And, "[a]llowing offensive collateral estoppel may . . . . be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent

with one or more previous judgments in favor of the defendant." *Parklane Hosiery*, 439 U.S. at 330, 99 S.Ct. at 651. In fact, this court has noted that the application of offensive collateral estoppel is "discouraged." *Miller v. Nw. Nat'l Ins. Co.*, 354 N.W.2d 58, 61, n.1 (Minn.App. 1984).

Despite the general opposition to the application of offensive collateral estoppel, we cautiously affirm its application in this case. There is no indication that All Finish failed to join the *Stenerson Bros.* action in order to adopt a "wait-and-see" approach. Moreover, Erickson had every incentive to defend vigorously in the first action; the alleged debt in the *Stenerson Bros.* action approached $500,000, which is considerably more than the approximately $30,000 debt at issue in this matter. Further, consideration of the four factors applicable to collateral estoppel demonstrates the extent to which these factors are present. Judicial economy will also be presumed in this case because there will not be needless relitigation of the issue decided in *Stenerson Bros.*, particularly where there is no reasonable possibility of a different outcome. Accordingly, we conclude that the district court's application of offensive collateral estoppel was not an abuse of discretion.

### C. Issues of material fact

Erickson contends that the district court erred by granting All Finish's motion for summary judgment because issues of material fact exist. But Erickson fails to assert any disputed factual issues that are material to this case. Instead, the factual issues material to this case concern Erickson's operation of Erickson Contracting as the alter ego of the corporation. Erickson does not dispute the district court's findings from *Stenerson Bros.* that he (1) siphoned funds from Erickson Contracting; (2) insufficiently capitalized Erickson Contracting; (3) transacted business through

Erickson Contracting while the corporation was insolvent; and (4) used Erickson Contracting as a mere facade. Because these are the only facts material to All Finish's veil-piercing claim, and because Erickson does not dispute these facts, summary judgment was appropriate.

Erickson further argues that summary judgment was inappropriate because the district court "simply impute[d] the findings and conclusions from the *Stenerson Bros.* action into the present case." Erickson contends that by doing so, the district court erred by failing to view the evidence in the light most favorable to him. But under Erickson's reasoning, a district court could never grant summary judgment based on collateral estoppel because the motion is reliant upon the facts of another case. This reasoning contradicts Minnesota law, which prohibits a party from relitigating issues that have been previously adjudicated. *See Hauser*, 263 N.W.2d at 806. Erickson does not dispute the facts material to All Finish's veil-piercing action. And viewing these facts in the light most favorable to Erickson does not mean that the district court must ignore these previously litigated facts. The district court did not err by granting summary judgment in favor of All Finish.

### III.

 Erickson challenges the district court's order amending the judgment to award interest to All Finish. The application and interpretation of a statute are questions of law that we review de novo. *Goldman v. Greenwood*, 748 N.W.2d 279, 282 (Minn. 2008).

"When a judgment or award is for the recovery of money ... interest from the time of the verdict, award, or report until judgment is finally entered shall be computed by the court administrator or arbitrator as provided in paragraph (c) and added to the judgment or award." Minn. Stat. § 549.09, subd. 1(a) (2016). Paragraph (c) provides: "For a judgment or award of $50,000 or less, ... interest shall be computed as simple interest per annum. The rate of interest shall be based on the secondary market yield of one year United States Treasury bills, calculated on a bank discount basis as provided in this section." Minn. Stat. § 549.09, subd. 1(c)(i) (2016).

Erickson argues that the "interest tolled from the May 4, 2012 judgment cannot be deemed 'post-judgment' interest" because All Finish did not bring an action against Erickson until it sought to pierce Erickson Contracting's corporate veil in December 2015. Erickson argues that the interest award should instead be categorized as prejudgment interest "due to the fact that the amended judgment added interest that accrued for nearly four years prior to the action against Erickson." He further argues that an award of prejudgment interest was impermissible.

Erickson's argument is without merit because it presumes that the proceeding brought by All Finish to collect on its judgment is a separate action, distinct from its suit against Erickson Contracting. But it is undisputed that the proceeding brought by All Finish to collect on its unpaid debt is in the nature of a creditor's suit. In *Wartman*, this court explained that a creditor's suit "is not 'an action brought upon the judgment as a cause of action, in order to obtain a new judgment, but simply an action ancillary to and for the purpose of obtaining satisfaction of, an existing judgment.'" 841 N.W.2d at 641 (quoting *Newell*, 28 Minn. at 249-50, 9 N.W. at 733). The court concluded that a creditor's veil-piercing action is not a new action within the meaning of Minn. Stat. § 541.04, which seeks to extend a judgment beyond the ten year statute-of-limitations period, because it is akin to a credi-

tor's suit, which is ancillary to the original judgment, and is intended only to satisfy an existing judgment. *Id.* at 643.

Here, All Finish's veil-piercing action was commenced to satisfy an existing judgment. Although Erickson was not a named party in the original suit, All Finish's veil-piercing action is not a new action because, under *Wartman*, it is ancillary to the original judgment and intended only to satisfy the existing judgment. *See id.* Because it is not a new action, the interest awarded by the district court relates back to the May 4, 2012 judgment. Thus, the interest awarded by the district court in the amended judgment was not "prejudgment" interest.

Erickson also argues that the district court's interest award constitutes impermissible "interest on interest." To support his claim, Erickson asserts that, of the $33,849.58 judgment entered on May 4, 2012, prejudgment interest was $7,196.37. Erickson claims that by amending the judgment "to include interest on the total $33,849.58, the district court improperly awarded interest on the interest already embedded" in All Finish's judgment against Erickson Contracting.

As demonstrated by the authority cited in his reply brief, Erickson's impermissible "interest on interest" argument is based on the assumption that the district court awarded prejudgment interest. But as explained above, the interest awarded by the district court was postjudgment interest. Such interest was permissible under Minn. Stat. § 549.09, subd. 1(a). Although a percentage of the judgment entered on May 4, 2012 may have included prejudgment interest, the amount of the *judgment* entered on that date totaled $33,849.58. Minn. Stat. § 549.09, subd. 1(a) allows a district court to award interest from the time a *judgment* was entered. Because the amount of the *judgment* was $33,849.58,

the district court was allowed to award postjudgment interest on that amount. *See id.* The district court did not err in awarding postjudgment interest to All Finish.

## DECISION

All Finish is not required to exhaust remedies because its creditor's bill action to pierce Erickson Contracting's corporate veil constitutes the second type of creditor's bill in equity discussed by the supreme court in *Lind,* and reiterated by this court in *Wartman,* where the property legally liable to execution has been fraudulently conveyed and the creditor is attempting to have the conveyance set aside. Moreover, the doctrines of laches and unclean hands are not applicable because All Finish brought this action to collect on its judgment within the ten-year statute-of-limitations period, and Erickson has not demonstrated a basis for application of these equitable defenses. The application of offensive collateral estoppel here was not an abuse of discretion because all four collateral estoppel factors were satisfied, and its application was not unfair under the unique circumstances presented in this case. Therefore, the district court did not err by granting All Finish's motion for summary judgment. And Erickson's argument that the district court awarded prejudgment interest to All Finish is without merit. Accordingly, we conclude that the district court did not err by denying Erickson's motion for summary judgment, granting All Finish's motion, and awarding postjudgment interest to All Finish.

**Affirmed.**